UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAVE OUR HERITAGE ORGANIZATION and FRIENDS OF THE U.S.-MEXICO BORDER ENVIRONMENT,        Plaintiffs,        v. ALBERTO R. GONZALEZ, U.S. DEPT. OF JUSTICE, MICHAEL CHERTOFF, U.S. DEPT. OF HOMELAND SECURITY, W. RALPH BASHAM, U.S. CUSTOMS AND BORDER PROTECTION, JULIE L. MEYERS, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, EMILIO T. GONZALES, and U.S. CITIZENSHIP AND IMMIGRATION SERVICES,        Defendants. | Case No. 1:07-cv-00308-RCL |

**MOTION TO DISMISS**

Pursuant to rule 12(b)(6), Fed. R. Civil P., defendants move to dismiss plaintiffs' complaint for failure to state a claim. The basis for this motion is set forth in the attached Memorandum of Points and Authorities.

DATED: April 20, 2007

KENNETH WAINSTEIN
United States Attorney

PETER D. KEISLER
Assistant Attorney Genera

1

KELLY A. JOHNSON
Acting Assistant Attorney General

CARL NICHOLS
Deputy Assistant Attorney General

SANDRA M. SCHRAIBMAN
Assistant Director


/s/_____
DANIEL BENSING
D.C. Bar No. 334268
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Tel: (202) 305-06930; Fax: (202) 616-8460
Email: Daniel.Bensing@USDOJ.gov

OF COUNSEL:

Chris Shaw
Office of the Assistant Chief Counsel
United States Customs and
       Border Protection
Department of Homeland Security

DONNA S. FITZGERALD
Connecticut Bar No. 411810
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C. 20044-0663
Tel: (202) 305-0476; Fax: (202) 353-7763
E-mail: Donna.Fitzgerald@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAVE OUR HERITAGE ORGANIZATION and FRIENDS OF THE U.S.-MEXICO BORDER ENVIRONMENT, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ALBERTO R. GONZALEZ, U.S. DEPT. OF JUSTICE, MICHAEL CHERTOFF, U.S. DEPT. OF HOMELAND SECURITY, W. RALPH BASHAM, U.S. CUSTOMS AND BORDER PROTECTION, JULIE L. MEYERS, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, EMILIO T. GONZALES, and U.S. CITIZENSHIP AND IMMIGRATION SERVICES, )<br><br>Defendants. ) | Case No. 1:07-cv-00308-RCL |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS**

**Introduction**

On September 13, 2005, pursuant to authority expressly granted to him by the Illegal

Immigration Reform and Immigrant Responsibilities Act of 1996, ("IIRIRA") as amended, Pub.

L. No. 109-13, § 102(c) (the "Waiver Legislation"), the Secretary of the Department of

Homeland Security ("DHS") waived the applicability of the eight federal statutes, with respect to

the construction of the 14-mile Border Infrastructure System along the U.S. border with Mexico

near San Diego ("BIS" or "San Diego Barrier") .  See 70 Fed. Reg. 55,622-623 (September 22,

2005) ("San Diego Waiver").  Similarly, pursuant to that same authority, on January 12, 2007,

the Secretary waived the applicability of nine statutes, with respect to the construction of the 37

mile border barrier near Yuma, Arizona ("Yuma Barrier").  See 72 Fed. Reg. 2535 (January 19,

2007) ("Yuma Waiver").

    Plaintiffs' eight-count complaint alleges that defendants have failed to comply with three

statutes in connection with the San Diego barrier, Complaint ("Compl.") ¶¶ 13-23, and have

ignored five statutes in connection with the Yuma barrier, id. ¶¶ 24-43.  However each of these

statutes has been waived by the Secretary, and consequently planning and construction of the two

barriers can proceed without regard to those statutory provisions.

    Under the judicial review provisions of the Waiver Legislation, the only challenge to a

waiver that can be entertained is one alleging "a violation of the Constitution of the United

States," IIRIRA, § 102c)(2)(A), and such claims must be filed within 60 days after the date of the

waiver being challenged.  Plaintiffs' complaint was filed on February 6, 2007 and therefore is

brought too late to challenge the San Diego Waiver.  Moreover, although plaintiffs vaguely

allege that "the legislation purporting to authorize the Secretary to waive those laws is

unconstitutional," Compl. ¶ 4, there are no constitutional infirmities in the Waiver Legislation or

in the two waivers in question, as the only court to consider this claim has already determined.

See Sierra Club v. Ashcroft, (S.D. Cal. 04-CV-272LAB (JMA).  Hence plaintiffs' unarticulated

Constitutional challenge to the Waiver Legislation is meritless and this action should be

dismissed with prejudice.

<u>**FACTUAL AND STATUTORY BACKGROUND**</u>

1.    <u>**Relevant Statutory Provisions**</u>

    a.    <u>**The Illegal Immigration Reform And Immigrant Responsibility Act of 1996,**</u>

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 8 U.S.C. § 1103 (note), as originally enacted, reflected a concerted effort by Congress to halt illegal immigration.  Section 102(a) of IIRIRA required "the Attorney General . . . [to] take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States."  This plenary grant of authority to construct barriers along the border to deter illegal crossings was supplemented by a specific directive for the construction of a barrier "along the 14 miles of the international land border of the United States, starting at the Pacific Ocean and extending eastward," consisting of three fences with roads between each, (<u>i.e.</u> the San Diego barrier). <u>Id</u>. § 102(b)(1).  Finally, the IIRIRA, as originally enacted, authorized the Attorney General to waive the Endangered Species Act of 1973 and the National Environmental Policy Act of 1969 when he determines such waiver is "necessary to ensure expeditious construction of the barriers and roads under this section." <u>Id</u>. § 102(c).

    b.    <u>**The Homeland Security Act Of 2002**</u>

Responsibility for the construction of border barriers transferred from the Attorney General to the Department of Homeland Security with passage of the Homeland Security Act of 2002, Pub. L. No. 107-296; <u>see also</u> Pub. L. No. 108-7, Division L, § 105.  The Act essentially

created DHS from other departments, abolished INS, and transferred Border Patrol functions to

the Under Secretary for Border and Transportation Security at DHS. See 6 U.S.C. §§ 251, 291.

The Act also amended IIRIRA to state that the Secretary of DHS has the power and duty to

control and guard U.S. borders against illegal entry. 8 U.S.C. §1103(a)(5). Finally, the Act

specifically identified the San Diego Barrier and expressed "the sense of the Congress that

completing the 14-mile border barrier project required to be carried out under section 102(b) of

[IIRIRA] should be a priority for the Secretary." 6 U.S.C. § 256 (emphasis added).

### c.    The REAL ID Act of 2005

In 2005, as part of the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, 8 U.S.C. § 1103

Note, Congress substantially broadened the IIRIRA waiver provision contained when that statute

was enacted, to provide the Secretary of DHS authority "notwithstanding any other provision of

law" to "waive all legal requirements" that he determines, in his "sole discretion," are "necessary

to ensure expeditious construction" of the barriers and roads authorized under Section 102(c) of

IIRIRA. See Id. § 102(c)(1). The Waiver Legislation, as amended by the REAL ID Act, makes

waivers effective upon publication in the Federal Register and limits challenges to alleged

violations of the Constitution (if brought within 60 days of the date of the action, i.e. Federal

Register publication ). Id. § 102(c)(1), (2). District courts have exclusive jurisdiction over such

challenges, id. § 102(c)(2)(A), and the only appellate review is directly to the Supreme Court

(upon petition for a writ of certiorari, id. § 102(c)(2)(c).

### d.    The Secure Fence Act of 2006

With the enactment of the Secure Fence Act of 2006, Congress substantially revised

section 102(b) of the IIRIRA to clarify that the barriers authorized under section 102(b) consisted

of not only fencing, but also "additional physical barriers, roads, lighting, cameras, and sensors." Id. Section 102 also directed the construction of fencing and physical barriers along five specific stretches of the border, including one "extending from 10 miles west of the Calexico, California, port of entry to 5 miles east of the Douglas, Arizona, port of entry," (i.e. the Yuma Barrier). Id. at § 102(b)(1)(A)(ii).

**2. The San Diego and Yuma Waivers**

    **a.    San Diego**

On September 13, 2005, Secretary Chertoff exercised his discretion under the Waiver Legislation and waived the application of eight statutes[1] that he deemed to be an impediment to the "expeditious construction" of the San Diego barrier. 70 Fed. Reg. 55,622-23 (September 22, 2005) (the "San Diego Waiver"). In the Waiver, the Secretary highlights Congress's desires that the San Diego Barrier be a priority for the Secretary, and notes that nine years have passed since IIRIRA was enacted, and the project "remains incomplete." Id. at 55,623. In that waiver, the Secretary "determined, pursuant to law, that it is necessary to waive certain laws, regulations and other legal requirements in order to ensure the expeditious construction of barriers and roads along the international land border of the United States in California." Id.

Construction of the San Diego barrier began in the late 1990s, but as of 2005, less than nine miles of the secondary barrier had been completed. Currently, DHS anticipates that the complete San Diego barrier, including three parallel fences and two intermediate roads, is

---

[1] The statutes that the Secretary waived are the National Environmental Policy Act, 42 U.S.C. § 4321, et seq., the Endangered Species Act, 16 U.S.C. § 1531, et seq., the Coastal Zone Management Act, 16 U.S.C. § 1451, et seq., ("CZMA"), the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et. seq., the National Historic Preservation Act, 16 U.S.C. § 470 et. seq., ("NHPA"), the Migratory Bird Treaty Act, 16 U.S.C. § 703 et. seq., ("MBTA"), the Clean Air Act, 42 U.S.C. § 7401 et. seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et. seq.

scheduled for completion in 2011.    **b.**    **Yuma**

On January 12, 2007, Secretary Chertoff exercised his discretion under the Waiver

Legislation and waived the application of nine statutes[2] that he deemed to be an impediment to

the "expeditious construction" of the Yuma Barrier (the "Yuma Waiver").  See 72 Fed. Reg. 2535

(January 19, 2007).  Again, in the Yuma waiver, the Secretary "determined, pursuant to law, that

it is necessary to waive certain laws, regulations and other legal requirements in order to ensure

the expeditious construction of physical barriers and roads in the vicinity of the internation land

border of the United States in Arizona."  Id.

The Yuma barrier, a part of DHS's Secure Border Initiative, will consist of a bollard-style

vehicle barrier with wire mesh welded to its fact, supplemented by radar towers that will permit

the use of newly-developed detection technology.  The Yuma barrier is currently under

construction and scheduled to be completed by the fall of 2007.

**3.**    **The Sierra Club v. Ashcroft Litigation**

Sierra Club v. Ashcroft (S.D. Ca. No. 04CV272LAB) was filed by several environmental

groups in February 2004 to challenge the construction of the San Diego Barrier under a variety of

NEPA arguments.   While the action was pending, the Secretary of DHS utilized his authority

under section 102(c) of the IIRIRA to issue the San Diego Waiver.  On September 20, 2005, the

Court in Sierra Club issued an Order to Show Cause as to why that case should not be dismissed

in light of the Waiver.  In response, Plaintiffs alleged that the Waiver Legislation constituted an

---

[2]The nine statutes waived were the National Environmental Policy Act, the Endangered Species
Act, the Federal Water Pollution Control Act, the Wilderness Act, 16 U.S.C. § 1131, et seq., the
National Historic Preservation Act, the National Wildlife Refuge System Administration Act, 16 U.S.C.
§ 668dd-668ee, ("NWRSAA"), the Military Lands Withdrawal Act of 1999, Pub. L. 106-65, the Sikes
Act, 16 U.S.C. § 16 U.S.C. 670, et seq., and the Administrative Procedure Act.

unconstitutional delegation of legislative power, and was unconstitutionally retroactive as applied

to Plaintiffs' pending suit.  Defendants filed a brief in opposition.

On December 12, 2005, District Judge Larry Alan Burns entered an Order dismissing all

claims in Sierra Club, concluding as follows:

> In summary, the intent to Congress' Waiver Legislation is clear:
> expedite completion of the particular 14-mile Triple Barrier along
> the U.S. Mexico Border in the San Diego area.  The means and
> limitations to facilitate that result are augmentation of the DHS
> Secretary's delegation authority to waive not only NEPA and ESA,
> but also any other laws or regulations, when necessary to remove
> impediments to that end.  The DHS Secretary exercised that
> delegated authority in the limited context approved by Congress
> and published explicit waivers of multiple specific environmental
> laws, including NEPA, in a section of the September 2005 Federal
> Register.  The waiver became effect upon publication.  NEPA
> requirements no longer apply to the BIS Triple Barrier construction
> process.   For the foregoing reasons, the Court finds NEPA
> compliance in the construction of the BIS is no longer an
> enforceable claim.  No constitutional claim is alleged in alleged in
> the Complaint or has survived the OSC briefing.

December 12, 2005 Order Dismissing Case ("Sierra Club Order"), 2005 U.S. Dist. LEXIS 44244

(S.D. Cal. 2005) Attachment A, hereto, at 16-17.  There was no appeal.

## ARGUMENT

**I.    Defendants Have Not Violated Any of the Seven Statutes Identified by the Plaintiffs
As the Waivers Rendered Them Inapplicable to The San Diego and Yuma Barriers**

Plaintiffs' eight causes of action each allege that all defendants[3] have violated one of

seven separate federal statutes in taking steps to begin work on the Yuma and San Diego

---

[3] As noted, the Department of Homeland Security and certain of its subcomponents are authorized to authorized the exercise the authority granted by the Waiver Legislation; the Attorney General and the Department of Justice no longer have that authority and hence are improperly named defendants.

Barriers.[4]   However, each of these seven statutes was specifically included within the applicable

waivers and consequently, defendants are not under any obligation to comply with these statutes

in their construction of the San Diego or Yuma Barriers.  Hence, plaintiffs can only prevail if

they can identify a "violation of the Constitution" in either of those two waivers, or demonstrate

that the Waiver Legislation itself is unconstitutional.

## II.    Plaintiffs' Challenge to the San Diego Waiver is Untimely.

Section 102(c) of the IIRIRA contains a very limited time period for when the limited

constitutional challenges that the statute permits can be filed.

> (B) Time for filing complaint.  Any cause or claim brought
> pursuant to subparagraph (A) shall be filed <u>not later than 60 days
> after the date of the action or decision made by the Secretary</u> of
> Homeland Security.  A claim shall be barred unless it is filed
> within the time specified.  (emphasis added)

<u>Id</u>.

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it

consents to be sued . . . and the terms of its consent to be sued in any court define that court's

jurisdiction to entertain the suit.'"  <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980) (quoting

<u>United States v. Sherwood</u>, 312 U.S. 584, 586 [1941]).  Only Congress may waive the United

States' sovereign immunity, and any waiver, "to be effective, must be 'unequivocally

expressed.'"  <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30, 33-34 (1992) (quoting <u>Irwin v.

Department of Veterans Affairs</u>, 498 U.S. 89, 95 [1990] [quoting cases]).  Waivers of sovereign

---

[4]Counts 1, 2 and 3 allege that federal defendants violated the CZMA, the NHPA and the MBTA, respectively, in connection with the San Diego barrier.  Counts 4 through 8 allege violations of the Wilderness Act, the NHPA, the NWRSAA, the Military Lands Act and the Sikes Act, respectively, in connection with the Yuma barrier.

immunity "are not generally to be 'liberally construed.'" Nordic Village, Inc., 503 U.S. at 34.

Thus, absent a clear waiver by Congress, courts are without jurisdiction to entertain a suit against

the United States. Mitchell, 445 U.S. at 538. A plaintiff suing the United States bears the burden

of showing an unequivocal waiver of sovereign immunity.

Because the limitations period contained in section 102(c)((2)(B) is a term of the United

States' consent to waive its sovereign immunity and subject itself to suit, "compliance with the

limitations period is a condition of federal court jurisdiction." Kendall v. Army Bd. for

Correction of Military Records, 996 F.2d 362, 366 (D.C. Cir. 1993); accord Orange Ridge, Inc. v.

State of Florida and United States, 696 F. Supp. 600, 604 (S.D. Fla. 1988). As such, the

limitations period must be "strictly observed and not easily overridden with exceptions." Orange

Ridge, 696 F. Supp. at 604; accord Spannaus v. Department of Justice, 824 F.2d 52, 55 (D.C.

Cir. 1987) ("Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition

attached to the government's wavier of sovereign immunity, and as such must be strictly

construed.") (citing United States v. Mottaz, 476 U.S. 834 [1986], and Soriano v. United States,

352 U.S. 270, 276 [1957]). Consequently, when a party suing the federal government fails to

demonstrate compliance with the statute of limitations, the court should dismiss the party's

claims for lack of jurisdiction. See Kendall, 996 F.2d at 366.

Thus, the IIRIRA, like any waiver of sovereign immunity must be strictly construed, and

its unambiguous, 60-day limitation for when an action may be brought under section 102(c) is

fatal to plaintiffs' challenge to the San Diego Waiver, which was published some seventeen

months prior to the initiation of this suit. The legality of that waiver was subsequently upheld by

the United States District Court for the Southern District of California, see Sierra Club v.

9

<u>Ashcroft</u>, 2005 U.S. Dist. LEXIS 44244 (December 13, 2005).

III.    **Section 102 of the IIRIRA and The San Diego and Yuma Barrier Waivers Do Not Violate the Constitution.**

Plaintiffs' complaint does not contain a specific cause of action alleging that the IIRIRA or the two waivers are in violation of the Constitution, much less an articulation of the legal theory for why there is such a violation.  Instead, plaintiffs' complaint contains the single, vague assertion that "the legislation purporting to authorize the Secretary to waive those laws is unconstitutional and therefore invalid and without any force or effect."  Complaint, ¶ 4. Defendants will briefly address the only potential constitutional claim that plaintiffs might assert–that the Waiver Legislation violates the Delegation Doctrine.

**<u>The Waiver Legislation Does Not Violate The Non-Delegation Doctrine</u>**

The non-delegation doctrine requires that Congress "lay down by legislative act an <u>intelligible principle</u> to which the person or body authorized [to exercise the delegated authority] is directed to conform." <u>Mistretta v. United States</u>, 488 U.S. 361, 372 (1989) (emphasis added) (citing <u>J.W. Hampton, Jr. & Co. v. United States</u>, 276 U.S. 394, 409 (1928)).  Rooted in "common sense and the inherent necessities of the government co-ordination," this minimal requirement stems from the "practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." <u>Mistretta</u>, 488 U.S. at 372 (citations omitted); <u>see also</u> <u>Loving v. United States</u>, 517 U.S. 748, 773 (1996) ("Separation-of-powers principles are vindicated, not disserved, by measured cooperation between the two political branches of the Government, each contributing to a lawful objective through its own

10

processes."). To set forth a constitutionally permissible "intelligible principle" while delegating authority to one of its coordinate Branches, Congress needs only to "'clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" Mistretta, 488 U.S. at 372-73 (quoting American Power & Light Co. v. Securities and Exchange Comm'n, 329 U.S. 90, 105 (1946)).

The Waiver Legislation meets these requirements and is thus constitutionally sufficient. As an initial matter, the Waiver authority is expressly vested in the Secretary of DHS. See IIRIRA, § 102(c)(1). The Waiver further contains a "clearly delineate[d] general policy" of improving U.S. border protection, § 102(a) (actions to be taken are those "as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States"), as well as a required method of achieving this important goal" "the installation of . . . physical barriers, roads, lighting, cameras and sensors," as well as "reinforced fencing." Id. § 102(b).[5/]

In furtherance of the general homeland security policy and the specific Congressional requirement to construct the barriers at this issue in this case, the Waiver Legislation permits the Secretary to "waive all legal requirements [that he] determines necessary to ensure expeditious construction of the barriers and roads under this section." IIRIRA, § 102(c) (emphasis added). Not only does this clause (and the surrounding statutory framework) establish a policy to guide

---

[5/]  See also the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2195, § 446 ("It is the sense of the Congress that completing the 14-mile border barrier project required to be carried out under section 102(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1103 note) should be a priority for the Secretary [of Homeland Security].").

the Secretary (i.e., that improved border protection is a high Congressional priority), but it also

marks the "boundaries of this delegated authority." See Mistretta, 488 U.S. at 372-73.  The

Waiver may be exercised only when the Secretary makes a determination of necessity.[6]

   Indeed, in Whitman v. American Trucking, 531 U.S. 457 (2001) the Supreme Court

found constitutionally permissible a delegation to EPA of authority "to set air quality standards at

the level that is 'requisite,' that is, not lower or higher than is necessary – to protect the public

health."  Id. at 474-76 (emphasis added); see also Touby v. United States, 500 U.S. 160, 163

(approving delegation to Attorney General to designate drug as controlled substance for purposes

of criminal drug enforcement if doing so was "necessary to avoid an imminent hazard to the

public safety").  Accordingly, the Supreme Court already has determined that a standard of

"necessity" – exactly the standard set out in the Waiver Legislation – "fits comfortably within the

scope of discretion permitted by [its] precedent."  531 U.S. at 475-76.  There is no reason to look

any further.

   Moreover, the legislation relates to matters of both foreign affairs and national security,

areas over which the Executive Branch independently maintain significant constitutional

authority.  See, e.g., United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 319-20 (1936)

(discussing "the very delicate, plenary and exclusive power of the President as the sole organ of

the federal government in the field of international relations"); Department of the Navy v. Egan,

484 U.S. 518, 527 (1988); People's Mojahedin Org. of Iran v. U.S. Department of State, 182

---

[6]   It is important to note that the Waiver Legislation does not authorize the Secretary to repeal laws; it only permits him to waive them under certain circumstances.  The statutory provisions made inapplicable by the Waivers thus remain law and are fully applicable outside of the context of the construction of these two barriers.

F.3d 17 (D.C. Cir. 1999) (declining to review determinations regarding national security made by the Executive), cert. denied, 529 U.S. 1104 (2000).  Immigration policy falls squarely within these areas.  See Knauff v. Shaughnessy, 338 U.S. 537, 542-43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . [and] is inherent in the executive power to control the foreign affairs of the nation.") (citations omitted); see also INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ("we have recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'") (citation omitted).

Because the Waiver Legislation delegates power to the Executive Branch to take action in an area over which it already maintains significant independent control, Congress may delegate in even broader terms than generally used.  See Loving, 517 U.S. at 772 ("same limitations on delegation do not apply 'where the entity exercising the delegated authority itself possesses independent authority over the subject matter'") (quotation and citations omitted).  "Congress – in giving the Executive authority over matters of foreign affairs – must of necessity paint with a brush broader than it customarily wields in domestic areas." Zemel v. Rusk, 381 U.S. 1, 17 (1965).  Addressing the precise issue raised by the Waiver here – Congressional delegation to the Executive Branch in the area of immigration policy – the Supreme Court explained clearly in Knauff the interrelated concepts of delegation and deference in foreign affairs matters like immigration policy:

> When Congress prescribes a procedure concerning
> the admissibility of aliens, it is not dealing alone
> with a legislative power.  It is implementing an
> inherent executive power. . . . Normally Congress
> supplies the conditions of the privilege entry into

> the United States.  <u>But because the power of
> exclusion of aliens is also inherent in the executive
> department of the sovereign, Congress may in broad
> terms authorize the executive to exercise the power</u> .
> . . for the best interests of the country . . .

338 U.S. at 542-43 (citations omitted) (emphasis added).

In reliance on these principles, the <u>Sierra Club</u> Court squarely rejected the delegation

doctrine claim in that case:

> [T]he Court find that improvement of U.S. border protection is the
> "clearly delineated general policy" required for a proper delegation,
> and that Congress adequately circumscribed the actions permitted
> to be taken as those "necessary to install additional physical
> barriers and roads" (specifically the "construction of fencing and
> road improvements in the border area near San Diego, California")
> for the purpose of "deter[ing] illegal crossings in areas of high
> illegal entry into the United States."  Section 102(b).  Congress
> thus articulated a policy to guide the DHS Secretary (*i.e.* the
> "boundaries of this delegated authority").

<u>Sierra Club</u> Order at 8:27-9:6.  The Court further noted that "Congress may delegate in broader

terms than generally used when the power given involves taking action in an area over which the

Executive Branch already maintains significant independent control."  <u>Id</u>. at 9:26-9:28.

Accordingly, not only does the Waiver Legislation satisfy the "intelligible principle" test

established by decades of Supreme Court jurisprudence, but when viewed through the required

deferential lens relating to matters of national security and foreign affairs, <u>i.e.</u>, immigration, it

can only be concluded that Congress appropriately delegated authority to the Secretary to take

necessary actions to protect U.S. borders.

14

## CONCLUSION

For these many reasons, the Court should dismiss Plaintiffs' complaint with prejudice.


DATED: April 20, 2007

KENNETH WAINSTEIN
United States Attorney

PETER D. KEISLER
Assistant Attorney Genera

KELLY A. JOHNSON
Acting Assistant Attorney General

CARL NICHOLS
Deputy Assistant Attorney General

SANDRA M. SCHRAIBMAN
Assistant Director


/s/_____
DANIEL BENSING
D.C. Bar No. 334268
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Tel: (202) 305-06930; Fax: (202) 616-8460
Email: Daniel.Bensing@USDOJ.gov

OF COUNSEL:

Chris Shaw
Office of the Assistant Chief Counsel
United States Customs and
          Border Protection
Department of Homeland Security

DONNA S. FITZGERALD
Connecticut Bar No. 411810
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C. 20044-0663
Tel: (202) 305-0476; Fax: (202) 353-7763
E-mail: Donna.Fitzgerald@usdoj.gov

15

<u>Certificate of Service</u>

I hereby certify that on this 20th day of April, 2007, I caused to be served by mail a copy of Defendants' Motion to Dismiss, upon the following counsel for plaintiffs:

Cory J. Briggs
Briggs Law Corporation
99 East "C" St., Suite 111
Upland, Cal. 91786


/s/_____
DANIEL BENSING

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAVE OUR HERITAGE ORGANIZATION and FRIENDS OF THE U.S.-MEXICO BORDER ENVIRONMENT, ) ) ) ) Plaintiffs, ) ) v. ) ) ALBERTO R. GONZALEZ, U.S. DEPT. OF JUSTICE, MICHAEL CHERTOFF, U.S. DEPT. OF HOMELAND SECURITY, W. RALPH BASHAM, U.S. CUSTOMS AND BORDER PROTECTION, JULIE L. MEYERS, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, EMILIO T. GONZALES, and U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ) ) ) ) ) ) ) ) ) ) ) Defendants. ) _____) | Case No. 1:07-cv-00308-RCL |

**ORDER**

UPON CONSIDERATION of defendants' Motion to Dismiss, plaintiffs' Opposition

thereto and the whole record herein, and after due deliberation, it is hereby

ORDERED that defendants' motion is granted and plaintiffs' Compliant is dismissed

with prejudice.


Date: _____        _____

UNITED STATES DISTRICT JUDGE

1

AO 450 Judgment in a Civil Case

# United States District Court

SOUTHERN DISTRICT OF CALIFORNIA

**FILED**

SIERRA CLUB

DEC 1 4 2005

V.

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

ASHCROFT

**JUDGMENT IN A CIVIL CASE**

**CASE NUMBER:**    04CV272LAB (JMA)

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

the issues presented in this Complaint are accordingly moot, and the action is **DISMISSED** in its entirety as to all claims and all parties.................................................................................................................................

| December 14, 2005 | W. Samuel Hamrick, Jr. |
|---|---|
| Date | Clerk |
| | C. Lisitza |
| | (By) Deputy Clerk |
| | ENTERED ON December 14, 2005 |





04CV272LAB (JMA)

FILED

05 DEC 13 AM 9: 15

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

SIERRA CLUB; CALIFORNIA NATIVE PLANT
SOCIETY; SOUTHWEST WETLANDS INTER-
PRETIVE ASSOCIATION; SAN DIEGO BAY-
KEEPER; SAN DIEGO AUDUBON SOCIETY; and
CENTER FOR BIOLOGICAL DIVERSITY,

                                        Plaintiffs,

vs.

JOHN ASHCROFT, in his official capacity as
ATTORNEY GENERAL OF THE U.S.; U.S.
DEPARTMENT OF JUSTICE; TOM RIDGE, in his
official capacity as Secretary of the U.S. DEPART-
MENT OF HOMELAND /SECURITY; U.S.
DEPARTMENT OF HOMELAND SECURITY;
ASA HUTCHINSON, in his official capacity as
Undersecretary of the U.S. DIRECTORATE OF
BORDER AND TRANSPORATION SECURITY;
U.S. DIRECTORATE OF BORDER AND TRANS-
PORTATION SECURITY; ROBERT C. BONNER,
in his official capacity as Commissioner of the U.S.
BUREAU OF CUSTOMS AND BORDER PRO-
TECTION; U.S. BUREAU OF CUSTOMS AND
BORDER PROTECTION; MICHAEL J. GARCIA,
in his official capacity as Assistant Secretary of the
U.S. BUREAU OF IMMIGRATION AND
CUSTOMS ENFORCEMENT; U.S. BUREAU OF
IMMIGRATION AND CUSTOMS ENFORCE-
MENT; EDUARDO AGUIRRE, JR., in his official
capacity as Director of the U.S. CITIZENSHIP AND
IMMIGRATION SERVICES; and U.S.
CITIZENSHIP AND IMMIGRATION SERVICES,

                                        Defendants.

CASE NO. 04CV0272-LAB (JMA)

**ORDER DISMISSING CASE**

- 1 -

04CV0272

I.    **OVERVIEW**

The Illegal Immigration Reform And Immigrant Responsibility Act of 1996 ("IIRIRA") authorized the building of a 14-mile Border Infrastructure System ("BIS") along the U.S. border with Mexico in the San Diego area. 8 U.S.C. § 1103 Note. In addition to an existing reinforced fence along the border, the IIRIRA Section 102(b) authorized the building of second and third fences and roads between the fences (the "BIS" or "Triple Fence"). Plaintiffs in this action are several environmental protection groups who filed their Complaint in February 2004 for declaratory and injunctive relief, challenging the adequacy of the environmental impact reviews associated with the planning and construction of the Triple Fence. They sue to enforce the standards and requirements imposed by the National Environmental Policy Act of 1969 ("NEPA").[1] They name as defendants the Attorney General of the United States; the U.S. Dept. of Justice; the Secretary of the Department of Homeland Security ("DHS"); the DHS; and four other federal agencies and their head administrators. Plaintiffs allege six claims and seek declaratory and injunctive relief to block construction of the second and third fences until all NEPA requirements are satisfied.

In June 2005, Congress enacted legislation delegating to the DHS Secretary the authority, in his sole discretion, to waive "all legal requirements" he determines necessary to expeditiously complete construction of the Triple Fence project, including but not limited to environmental laws (the "Waiver Legislation"). The Waiver Legislation also insulates BIS decisions from judicial review, other than for constitutional challenges. The DHS Secretary exercised his congressionally-delegated authority on September 13, 2005 by expressly waiving the applicability of NEPA and several other laws to the border fence construction.

Plaintiffs' February 2004 Complaint alleges only that the DHS' proposed action would violate NEPA in various ways. On September 20, 2005, this Court issued an Order To Show Cause ("OSC")

---

[1] NEPA requires federal agencies to examine the environmental effects of proposed federal actions and to inform the public of the environmental concerns that were considered in the agency's decision-making. Baltimore Gas & Electric Co. v. National Resources Defense Counsel, Inc., 462 U.S. 87, 97 (1983). NEPA legislation prescribes procedural requirements without requiring an agency to reach any particular result based on the information it collects and analyzes. Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350-51 (1989). "Congress, in enacting NEPA, however, did not require agencies to elevate environmental concerns over other appropriate considerations . . . . The role of the courts is simply to ensure that the agency had adequately considered and disclosed the environmental impact of its actions and that its discretion is not arbitrary or capricious." Baltimore Gas, 462 U.S. at 97-98.

1   why this case should not be dismissed for lack of jurisdiction, in consideration of the legislative action

2   and the DHS Secretary's exercise of his delegated authority. In response to the OSC, plaintiffs argue:

3   (1) the Waiver Legislation violates the Constitution by impermissibly delegating legislative authority

4   to the DHS Secretary; (2) application of the waiver to their case violates the Constitution by enabling

5   the DHS Secretary to abolish the district court's jurisdiction over their case; and (3) application of the

6   waiver to their case, pending before the legislation was enacted, is an impermissibly retroactive

7   application of the Waiver Legislation. Defendants respond that this Court now lacks jurisdiction over

8   the dispute and must dismiss the case.

9       On December 12, 2005, the Court convened the OSC hearing. Cory Briggs, Esq. appeared for

10   plaintiffs. Matthew LePore, Esq., Donna Fitzgerald, Esq., and Melissa Erny, Esq. appeared for

11   defendants. After consideration of the papers submitted and arguments of counsel, as discussed below,

12   the Court finds the Waiver Legislation divested the district courts of jurisdiction to hear plaintiff's

13   NEPA challenges to the BIS completion when the DHS Secretary formally waived that statute's

14   application to the project.[2]   The dispute in this action has been mooted by legitimate process in the

15   legislative and executive branches of the government. Accordingly, for the reasons discussed below,

16   the case is **DISMISSED** in its entirety.

17   **II,    LEGAL DEVELOPMENTS AND STANDARDS**

18       As enacted in 1996, IIRIRA, Section 102 directed:

19             ... the Attorney General ... [to] take such actions as may be necessary
20             to install additional physical barriers and roads, including removal of
     obstacles to detection of illegal entrants) in the vicinity of the United
     States border to deter illegal crossings in areas of high illegal entry into
21             the United States ... [including specifically the construction] along the
     14 miles of the international land border of the United States, starting
22             at the Pacific ocean and extending eastward, of second and third fences,
     in addition to the existing reinforced fence, and for roads between the
23             fences.

24   IIRIRA at § 102(b)(1).

25   \\

26

27      [2] Plaintiffs attempt to characterize the Waiver Legislation and DHS Secretary's exercise of his waiver discretion as not jurisdictional because "it does not transfer Plaintiff's case to another forum; if applied, there will be *no* forum." Pl. Brief p. 23. This observation begs the question, however, since "[a] jurisdictional rule

28   can deny a litigant a forum for his claim entirely." Landgraf v. USI Film Products, 511 U.S. 244, 292 (1994) (Scalia, J. concurring).

1        To ensure the authorized border fence would be constructed with deliberate speed, Congress

2    expressly provided that the Endangered Species Act of 1973 ("ESA") and NEPA were "waived to the

3    extent the Attorney General determines necessary to ensure expeditious construction" of the barriers

4    and roads. IIRIRA, Section 102(c). The United States Border Patrol, then a sub-agency within the

5    INS, began constructing the BIS as authorized by the IIRIRA, although the agency also prepared a

6    series of NEPA analyses of the environmental impact, consulted with the U.S. Fish and Wildlife

7    Service, and prepared a statement for the California Coastal Commission. *See* Def.'s Brief 4:11-21.

8        The Homeland Security Act of 2002 ("HSA") created the DHS, consolidating various

9    departments, including the INS. The DHS acquired the Border Patrol functions, power, and duty to

10   control and guard U.S. borders against illegal entry. The HSA also specifically addressed the BIS:

11   it is "the sense of the Congress that completing the 14-mile border fence project required to the carried

12   out under section 102(b) of [IIRIRA] should be a priority for the Secretary." 6 U.S.C. § 256.[3]

13       Congress enacted the REAL ID Act in May 2005. Part of that Act amended the IIRIRA

14   provisions applicable to the BIS to accord sole discretion to the DHS Secretary to "waive all legal

15   requirements" the Secretary determines are "necessary to ensure expeditious construction" of the

16   barriers and roads authorized by Section 102(c) of IIRIRA. Section 102(c) of Pub.L. No. 109-13, 119

17   Stat. 231, 8 U.S.C. § 1103 Note ("Waiver Legislation") (emphasis added). The Secretary's waiver

18   determinations become effective upon their publication in the Federal Register. *Id.*

19           SEC. 102.  WAIVER OF LEGAL REQUIREMENTS NECESSARY
             FOR IMPROVEMENT OF BARRIERS AT BORDERS; FEDERAL
20           COURT REVIEW.

21           Section 102(c) of the [IIRIRA] is amended to read as follows:  "(c)
             WAIVER. -- (1) IN GENERAL-- Notwithstanding any other provision
22           of law, the Secretary of Homeland Security shall have the authority to
             waive all legal requirements such Secretary, in such Secretary's sole
23           discretion, determines necessary to ensure expeditious construction of
             the barriers and roads under this section.  Any such decision by the
24           Secretary shall be effective upon being published in the Federal
             Register.

25

26       [3] "TITLE 6; DOMESTIC SECURITY; CHAPTER 1--HOMELAND SECURITY ORGANIZATION;
     SUBCHAPTER IV--DIRECTORATE OF BORDER AND TRANSPORTATION SECURITY; PART
27   D--IMMIGRATION ENFORCEMENT FUNCTIONS. § 256. Sense of Congress regarding construction of
     fencing near San Diego, California.  It is the sense of the Congress that completing the 14-mile border fence
28   project required to be carried out under section 102(b) of the Illegal Immigration Reform and Immigrant
     Responsibility Act of 1996 (8 U.S.C. 1103 note) should be a priority for the Secretary."

U.S.P.L. 109-13, HR 1268, Div. B -- REAL ID Act of 2005, 119 Stat 231 (May 11, 2005) (the "Waiver Legislation" or "§ 102(c)").

The Waiver Legislation also addressed the subsequent role of federal courts:

> (2) FEDERAL COURT REVIEW. ---
>
> (A) IN GENERAL.-- The district courts of the United States shall have exclusive jurisdiction to hear all causes or claims arising from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to paragraph (1) [of Section 102(c)]. **A cause of action or claim may only be brought alleging a violation of the Constitution of the United States. The court shall not have jurisdiction to hear any claim not specified in this subparagraph.**

Section 102(c)(2) (emphasis added).

DHS Secretary Chertoff exercised the discretion vested in him by the Waiver Legislation on September 13, 2005, and published waivers in the Federal Register on September 22, 2005. He expressly found the application of eight statutes (including NEPA) impeded the "expeditious construction" of the BIS. 70 Fed.Reg. 55,622-23. In waiving those requirements, the Secretary emphasized Congress' desire that he make the BIS completion a "priority" and noted that nine years had already passed since IIRIRA was enacted, with the project still incomplete. _Id._ at 55,623. The published notice "Summary" recites:

> The Secretary of Homeland Security has determined, pursuant to law, that it is necessary to waive certain laws, regulations and other legal requirements in order to ensure the expeditious construction of barriers and roads along the international land border of the United States in California.

70 FR 5562-02, 55563, 2005 WL 2295005 (F.R.). The Notice continues, in pertinent part:

> . . . In [amended] section 102(c) of the IIRIRA, . . . Congress granted me the authority to waive all legal requirements that I, in my sole discretion, determine necessary to ensure the expeditious construction of barriers and roads under section 102 of IIRIRA.
>
> In section 102(b) of the IIRIRA, Congress specifically provided for the construction along the 14 miles of the international land border of the United States . . . of second and third fences, in addition to the reinforced fence, and for roads between the fences. . . . Congress expressed its sense that completing the 14-mile border project under section 102(b) of the IIRIRA should be a priority for the Secretary of Homeland Security. Nearly nine years after the passage of the IIRIRA, the project prescribed in section 102(b) of the IIRIRA remains incomplete.
>
> **In order to ensure the expeditious construction of the barriers and roads that Congress prescribed, . . . I have determined**

- 5 -

**that it is necessary that I exercise the authority that was transferred to me by sections 1511 and 1517 of the [HSA] and that vested in me by section 102(c) of the IIRIRA . . . . I hereby waive in their entirety, with respect to the construction of the barriers and roads prescribed in section 102(b) of the IIRIRA . . . all federal, state, or other laws, regulations and legal requirements of, deriving from, or related to the subject of, the following laws as amended: The National Environmental Policy Act [NEPA] . . . (42 U.S.C. 4321 et seq.), the Endangered Species Act . . . (16 U.S.C. 1531 et seq.), the Coastal Zone Management Act . . . (16 U.S.C. 1451 et seq.), the Federal Water Pollution Control Act (commonly referred to as the Clean Water Act) . . . (33 U.S.C. 1251 et seq.), the National Historic Preservation Act . . . (16 U.S.C. 470 et seq.), the Migratory Bird Treaty Act (16 U.S.C. 703 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and the Administrative Procedure Act (5 U.S.C. 551 et seq.) . . . . to accomplish the provisions of section 102 of IIRIRA.**

Id. (emphasis added).

## III.    PLAINTIFFS' CHALLENGES TO DISMISSAL

Plaintiffs here characterize the DHS Secretary's action as pulling "NEPA out from underneath Plaintiffs" who purportedly "have firm rights and settled expectations to participate meaningfully in the design of the Triple Fence and obtain information about how to minimize or avoid its environmental impacts." Pl's Brief 20:21-23. They contend the Waiver Legislation if applied to this case "would deprive them of their rights, undermine their settled expectations, and frustrate their years of relying on NEPA's applicability to the Triple Fences." Pl's Brief 20:24-25. They argue the Court cannot simply "refuse to apply that statutory provision here" because plaintiffs will suffer "certain injury to [their] rights [under NEPA to have information about the environmental consequences of the project], long-held expectations, and reasonable reliance [on the NEPA process]." Pl's Brief 23:1-3. See Sierra Club v. Andrus, 581 F.2d 895, 900 n.16 (1978), reversed on other grounds in Andrus v. Sierra Club, 442 U.S. 347 (1979) ("an organization with an institutional concern with informing both its members and the public on matters of public policy and decisions which fall within the concern of NEPA has a statutory right to the information which NEPA obliges the agency to compile in an EIS").

More specifically, plaintiffs raise three discrete legal challenges to the Waiver Legislation and Secretary Chertoff's exercise of delegated authority:  (1) the Waiver Legislation represents an unconstitutional delegation of legislative authority to the DHS Secretary; (2) the Waiver Legislation is unconstitutional because it permits the DHS Secretary to abolish federal statutory jurisdiction that

\\

04CV0272

1  would ordinarily govern this dispute; and (3) the Waiver Legislation operates in an impermissibly

2  retroactive manner. Plaintiffs' legal challenges are discussed in detail below.

3       **A.**    **The Delegation Is Not Unconstitutional**

4       Plaintiffs argue "the Waiver Legislation violates the non-delegation doctrine embodied in

5  Article I of the U.S. Constitution by delegating a legislative function to the Secretary of Homeland

6  Security without articulating an intelligible principle to guide the exercise of discretion." Pl's Brief

7  3:23-4:1. Article I Section I of the Constitution vests all legislative powers in the Congress, and

8  Congress is not permitted "to abdicate, or to transfer to others, the essential legislative functions with

9  which it is vested." Panama Refining Co. v. Ryan, 293 U.S. 388, 421 (1935).

10      Congress is permitted, however, to authorize another branch of government to carry out its law-

11  making responsibilities if it provides adequate guidance accompanying the delegation. To be a

12  legitimate delegation, Congress must "lay down by legislative act an intelligible principle to which the

13  person or body authorized [to exercise the delegated authority] is directed to conform." Mistretta v.

14  United States, 488 U.S. 361, 372, 372-73 (1989) (it is enough to satisfy the Constitution that the

15  "intelligible principle" delegating authority to one of the coordinate Branches "clearly delineates the

16  general policy, the public agency which is to apply it, and the boundaries of this delegated authority").

17  "[T]he degree of agency discretion that is acceptable varies according to the scope of the power

18  congressionally conferred." Whitman v. American Trucking Ass'ns, 531 U.S. 457, 475 (2001)

19  (upholding Clean Air Act regulations against challenge based on the non-delegation doctrine). When

20  the area to which the legislation pertains is one where the Executive Branch already has significant

21  independent constitutional authority, delegations may be broader than in other contexts. Loving v.

22  United States, 517 U.S. 748, 772 (1996).

23      Plaintiffs argue that granting the DHS Secretary "discretion to pick and choose" which laws

24  to waive does not pass the "intelligible principle" test because the delegation permits the exercise of

25  "unbridled discretion." Pl. Brief 4:24-27. They contend Congress gave the Secretary no guiding

26  principle for his selection of which laws to waive, creating "an unlimited scope of discretion conferred

27  upon the Secretary to waive *all* laws," a purportedly "derelict" delegation. Pl. Brief. 10:19-24.

28  \\

1       To underscore this point, plaintiffs attempt to distinguish the revised Waiver Legislation from

2   original IIRIRA Section 102(c). In the original version, Congress expressly referenced NEPA and

3   ESA in the text of the legislation as provisions of law that were waivable in the BIS construction

4   process "to the extent the Attorney General determines necessary to ensure expeditious construction

5   of the barriers and roads under this section." *See* Pub.L. 104-208, 110 Stat. 3009 (8 U.S.C. § 1103

6   note). Plaintiffs do not dispute the constitutionality of the initial delegation: "There was no unlawful

7   delegation of the legislative function under the original version because Congress *itself* decided to

8   waive NEPA, subject only to the Attorney General's determination that the waiver was 'necessary to

9   ensure expeditious construction of the roads and barriers under this section." Pl's Brief 11: 1-5, fn 5.

10   In supposed contrast, plaintiffs argue:  "Under the current version of Section 102(c), however,

11   Congress has made no decision about what laws should and should not be waived. That decision was

12   delegated -- unconstitutionally -- to the Secretary of Homeland Security." Pl. Brief 11:5-7.

13       However, the "barriers and roads" alluded to are the same in both articulations of Section

14   102(c): the Triple Fence project located along the U.S-Mexico border in the vicinity of San Diego.

15   Pl. Brief p. 8, fn. 3, *citing* Pub.L. 104-208, 110 Stat. 3009-554, *amended by* Pub.L. 109-13, 119 Stat.

16   306 (8 U.S.C. § 1103 note), subsections (a) & (b). In both versions of Section 102(c), Congress

17   delegates to an Executive Branch official the authority to make the determination whether NEPA (or,

18   now, *any other law or administrative procedure) needs to be waived in order to expedite completion*

19   of the BIS. Here, it is significant that plaintiff's Complaint relies solely on NEPA to state their claims.

20   Congress did not revoke its prior express authorization that NEPA could be waived "to the extent the

21   [delegated decision maker] determines necessary to ensure expeditious construction of the barriers and

22   roads under this subsection." 8 U.S.C. § 1103 Note. Rather, Congress simply broadened the scope

23   of the waiver authority of the pre-existing delegation to "all laws," but again only for the narrow

24   purpose of expeditious completion of the Triple Fence authorized by the IIRIRA. Thus, the Waiver

25   Legislation effected no change in the already plenary scope of the delegated discretion to waive NEPA

26   provisions that existed before plaintiffs filed their Complaint in this case.

27       Moreover, the Court finds that improvement of U.S. border protection is the "clearly

28   delineated general policy," required for a proper delegation, and that Congress adequately

            04CV0272

1    circumscribed the actions permitted to be taken as those "necessary to install additional physical

2    barriers and roads" (specifically, the "construction of fencing and road improvements in the border area

3    near San Diego, California") for the purpose of "deter[ing] illegal crossings in areas of high illegal

4    entry into the United States." Section 102(b). Congress thus articulated a policy to guide the DHS

5    Secretary (*i.e.*, improved border protection as a high congressional priority), as well as the means by

6    which to advance the policy (*i.e.*, the"boundaries of this delegated authority"). *See* <u>Mistretta</u>, 488 U.S.

7    at 372-73. Those boundaries are waiver of laws and regulations which the DHS Secretary determines

8    impede completion of **this particular** 14-mile California border Triple Fence authorized by IIRIRA,

9    and only upon the Secretary making a determination of necessity. The delegation is restricted to

10   *waiver* of laws solely in the context of construction of this Triple Fence, not their "repeal."

11          Applying a standard of "necessity" to Congress' delegation of authority passes constitutional

12   muster. In <u>Whitman</u>, the Supreme Court found constitutionally permissible a delegation to

13   Environmental Protection Agency of authority "to set air quality standards at the level that is 'requisite,'

14   that is, not lower or higher than is necessary -- to protect public health." <u>Whitman</u>, 531 U.S. at 474-76.

15   Such a "necessity" standard is articulated in the Waiver Legislation. The Court finds Congress

16   provided an adequate standard for the exercise of the DHS Secretary's delegated waiver authority over

17   laws impeding the completion of the BIS: "necessity," *i.e.*, when needed "to ensure expeditious

18   construction of the barriers and roads under this section." Section 102(c)(1).

19          Finally, the Court observes that Congress' delegation of authority to the Executive Branch at

20   issue here relates to matters over which the Executive Branch has independent and significant

21   constitutional authority: immigration and border control enforcement and national security. *See*

22   <u>Knauff v. Shaughnessy</u>, 338 U.S. 537, 542-43 (1950) (immigration policy falls within the inherent

23   executive powers); *see also* <u>INS v. Aguirre-Aguirre</u>, 526 U.S. 415, 425 (1999) ("we have recognized

24   that judicial deference to the Executive Branch is especially appropriate in the immigration context

25   where officials 'exercise especially sensitive political functions that implicate questions of foreign

26   relations'") (citations omitted). To reiterate, Congress may delegate in broader terms than generally

27   used when the power given involves taking action in an area over which the Executive Branch already

28   maintains significant independent control. <u>Loving</u>, 517 U.S. at 772 ("same limitations on delegation

- 9 -

1    do not apply 'where the entity exercising the delegated authority itself possesses independent authority

2    over the subject matter'") (citations omitted); *see* <u>Freedom To Travel v. Newcomb</u>, 82 F.3d 1431, 1438

3    (9th Cir. 1996) ("It is well settled that 'Congress -- in giving the Executive authority over matters of

4    foreign affairs -- must of necessity paint with a brush broader than it customarily wields in domestic

5    areas'") (citation omitted).  That the delegation of authority in this instance implicates immigration

6    enforcement and national security -- matters in which the Executive Branch already exercises

7    considerable independent authority -- underscores the conclusion that the delegation was proper.

8        The cases cited by plaintiffs do not compel a different conclusion.  In <u>Panama Refining</u>, the

9    Supreme Court found Congress' delegation of powers to the President was unconstitutional for lack

10   of any intelligible principle because the delegation  failed to "state whether or in what circumstances

11   or in what conditions" the President was to prohibit the transport of petroleum products and for failure

12   to "require any finding by the President as a condition of his action." <u>Panama Refining</u>, 293 U.S. at

13   415, 421 (reviewing the National Industrial Recovery Act, after the President issued an executive order

14   under that delegated authority delegated to prohibit the interstate and foreign transportation of

15   petroleum products in excess of the amount permitted by state laws, and holding the Act

16   unconstitutionally delegated legislative power to the President).  The constitutional infirmity of that

17   delegation was that Congress "declared no policy, has established no standard, has laid down no rule.

18   There is no requirement, no definition of circumstances and conditions in which the transportation is

19   to be allowed or prohibited," imposing no limitations on Presidential authority to make law. <u>Id.</u> at 430.

20       In contrast to the <u>Panama Refining</u> delegation, the DHS Secretary under the Waiver Legislation

21   must make a finding of necessity to expedite completion of the particular BIS described in IIRIRA

22   before invoking his waiver authority.  In consideration of the broad homeland security responsibilities

23   vested in the Executive Branch, and the deference owed the Executive Branch in matters of national

24   security and foreign affairs, this case is distinguishable from both <u>Panama Refining</u> and the second

25   case plaintiffs cite, <u>A.L.A. Schechter Poultry Corp. v. United States</u>, 295 U.S. 495, 541-50 (1935)

26   (holding a delegation that had "conferred authority to regulate the entire economy on the basis of no

27   more precise a standard than stimulating the economy by assuring 'fair competition'" was

28   unconstitutional for failure to provide any standards for any trade, industry, or activity, converting

- 10 -

04CV0272

1  Congress' delegation into an "unfettered" and impermissible authorization for the President essentially

2  to enact laws regulating trade and industry).  As noted by defendants:  "The limited delegation to the

3  Secretary of DHS here solely to facilitate the speedy construction of [the Triple Fence] to improve U.S.

4  border security -- simply does not compare."  Def.'s Brief 11:2-4.

5  **B.    Exercise Of The Waiver Does Not Violate Article III, Section I[4]**

6       Plaintiffs contend application of the waiver to their case is unconstitutional because it enables

7  the DHS Secretary to abolish the district court's jurisdiction, which existed at the time they filed their

8  lawsuit alleging the BIS was proceeding in violation of the regulatory requirements of NEPA.  Pl's

9  Brief 11:16-17.  They argue the Secretary's exercise of his waiver authority violates separation of

10  powers if applied to this case because "[o]nly Congress may oust a federal court's jurisdiction over a

11  pending case, which it opted not to do here," and the Secretary "will have effectively repealed the

12  statute on which this Court's jurisdiction is based -- NEPA . . . ."  Pl's Brief 12:6-9, 23:23-24 (giving

13  retroactive effect to the Waiver Legislation "would raise serious separation-of-powers concerns over

14  matters of delegation and federal-court jurisdiction").  Plaintiffs argue congressional delegation of

15  authority to "waive" statutory requirements, even for one particular project, is tantamount to allowing

16  the Executive Branch to "repeal" statutes and to divest courts of congressionally-conferred jurisdiction:

17       [The waiver] is unconstitutional because it effectively repeals NEPA,
     the federal statute on which this Court's jurisdiction over Plaintiffs' case
18       is based. . . . If Waiver is invoked here in a manner that exempts
     Defendants from having to comply with NEPA, then it will have been
19       the Secretary of Homeland Security's unilateral action that removed the
     statutory basis for this Court's jurisdiction.  Such action by an officer of
20       the executive branch, rather than by Congress, is prohibited by the
     Constitution.

21  Pl. Brief 13:19-14:3, *citing* U.S. Const. art. III, § 1.

22       "[H]ow far Congress may go in delegating authority to designate or limit the jurisdiction of the

23  federal courts is a complex question that has not yet received a definitive answer."[5]  Rein v. Socialist

24

25

26       [4]  Article III, sec. I vests the judicial power of the United States in "one supreme Court, and in such
     inferior Courts as the Congress may from time to time ordain and establish."

27       [5]  The Second Circuit's Rein court discussed two cases.  In Jones v. United States, 137 U.S. 202 (1890),
     the jurisdiction of United States courts to try plaintiff for a murder on a Caribbean island depended on the
28  island's status as an American territory.  The Secretary of State, pursuant to a statutory delegation, had recently
     determined the island was an American territory, so that an Executive Branch decision created jurisdiction.

- 11 -

1  People's Libyan Arab Jamahiriya, 162 F.3d 748, 762-64 (2nd Cir. 1998).  The DHS Secretary's

2  decision to exclude the BIS construction from NEPA requirements eliminates the theory of plaintiffs'

3  Complaint.  However, the Waiver Legislation expressly reserves to the federal district courts

4  jurisdiction "to hear all causes or claims arising from" the Waiver that "alleg[e] a violation of the

5  Constitution of the United States."  Section 102(c)(2)(A).  Congress did not delegate authority to

6  designate or limit the jurisdiction of federal courts.  The Waiver Legislation *itself* restricted judicial

7  review of any claims to constitutional challenges.  Thus, contrary to plaintiffs' argument, Congress,

8  not the DHS Secretary, circumscribed the judicial review available for decisions of the Secretary in

9  the exercise of delegated authority to expedite construction of this particular BIS.  Congress expressly

10  contemplated from the outset that NEPA could be suspended for that purpose.  This court may not now

11  adjudicate claims or causes based on non-compliance with enacted procedural requirements the DHS

12  Secretary has determined must be waived in order to expedite completion of the BIS.

13  **C.    Application Of The Waiver Legislation To This Case Is Not Impermissibly Retroactive**

14         For the reasons discussed in detail below, the Court finds this is not a case of retroactive

15  application of new legislation.  The BIS has been authorized for over nine years, including from its

16  inception Congress' express authorization, delegated to the Executive Branch, to waive the application

17  of NEPA to the Triple Fence project if necessary to accomplish its construction.  The exercise of that

18  delegated authority in September 2005 exempted the BIS from NEPA requirements.  Plaintiffs'

19  standing to sue to enforce NEPA, as well as this Court's jurisdiction to review NEPA issues -- or any

20  issues other than constitutional questions under the Waiver Legislation -- with respect to the Triple

21  Fence project  were lost with the DHS Secretary's exercise of his delegated authority.

22         Plaintiffs argue "because this proceeding was initiated long before the Waiver Legislation was

23  enacted, its application -- and *a fortiori* the Waiver's application -- would violate the rule against the

24  retroactive application of legislation."  Pl's Brief 4:3-5.  They contend their litigation should not be

25

26  In Matimak Trading Co. v. Khalily, 118 F.3d 748 (2nd Cir. 1997), a Hong Kong corporation sought to sue

27  defendants in New York by invoking "alienage" jurisdiction. The basis for jurisdiction depended on whether
   Hong Kong qualified as a foreign state. The court held that "recognizing foreign states and governments is a
   function of the executive branch, on whose determination, therefore, the existence of jurisdiction depended."

28  Id. at 764 (denying diversity jurisdiction because the executive branch had not recognized Hong Kong as a
   state).

04CV0272

1    affected by those subsequent events. They rely on <u>INS v. St. Cyr</u>, 533 U.S. 289 (2001) for the

2    proposition that the comprehensive overhaul of major immigration legislation through the 1996

3    IIRIRA only applies retroactively to pending cases when specific provisions of the IIRIRA expressly

4    so provide, and <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 208 (1988) ("congressional

5    enactments and administrative rules will not be construed to have retroactive effect **unless their**

6    **language requires this result** ") (emphasis added). Plaintiffs contend the 2005 Waiver Legislation

7    lacks retroactive application language. Defendants argue plaintiffs' failure to raise any distinct

8    constitutional challenge based on their retroactivity challenge divests the court of jurisdiction to

9    consider their claims, under Section 102(c)(2)(A). [6]

10        The parties agree the two-part test for retroactivity appears in <u>Landgraf</u>, 511 U.S. 244.

11            When a case implicates a federal statute enacted after the events
             in suit, the court's first task is to determine whether Congress has
12           expressly prescribed the statute's proper reach. **If Congress has done
             so, of course, there is no need to resort to judicial default rules.**
13           When, however, the statute contains no such express command, the
             court must determine whether the new statute would have retroactive
14           effect, *i.e.*, whether it would impair rights a party possessed when he
             acted, increase a party's liability for past conduct, or impose new duties
15           with respect to transactions already completed. If the statute would
             operate retroactively, our traditional presumption teaches that it does
16           not govern absent clear congressional intent favoring such a result.

17    <u>Landgraf</u>, 511 U.S. at 280 (emphasis added).

18        Courts thus first determine whether Congress has expressly prescribed the statute's proper

19    scope. A statute is not deemed to have retroactive effect "merely because it is applied in a case arising

20    from conduct antedating the statute's enactment, or upsets expectations based in prior law." <u>Landgraf</u>,

21    511 U.S. at 269. Even if the statute would operate retroactively, if congressional intent clearly favors

22    such a result, the statute may still operate retroactively.

23    \\

24

25        [6] Defendants argue, among other things, "it is not apparent that Plaintiffs' argument is premised on
     the Constitution, and under the Waiver Legislation, this Court may *only* hear claims 'alleging a violation of the
26   Constitution of the United States.' Act at § 102(c)(2)(A)." "Absent a violation of one of th[e] specific
     [constitutional] provisions [related to retroactivity], the potential unfairness of retroactive civil legislation is
27   not a sufficient reason for a court to fail to give a statute its intended scope." <u>Landgraf</u>, 511 U.S. at 267.
     However, plaintiffs challenge the Waiver Legislation, so to apply it at all, including addressing whether it is
28   applicable "retroactively" to cases pending in federal court before it was enacted, requires the threshold
     determination whether it is unconstitutional.

1    The subject matter of Section 102(c) pertains to this particular BIS project.  The amendment
2  simply increases the authority of the DHS Secretary (already vested in the Executive Branch expressly
3  with respect to NEPA and ESA waiver) "to ensure expeditious construction of the barriers and roads
4  under this section."  8 U.S.C. § 1103 Note.  Plaintiffs' posit the hyper-technical requirement that
5  Congress must articulate a "clear command or directive in a statute requiring retroactive application"
6  from a "point in time from which the statute applies retroactively" to argue there is "no express
7  command for retroactive application of the waiver legislation."  Pl. Brief 16:10-14.  However,
8  congressional intent in the revision is clear from the subject matter of Section 102(c):  expedite
9  completion of the BIS Triple Fence.  The "language" of the "congressional enactment" cannot be
10  construed otherwise than as specifically targeting the subject matter of this case.  The "express
11  statutory grant" plaintiffs insist courts must find before retroactive application is proper arises from
12  the narrow focus of the legislation.  A finding of intended "retroactive" application of the waiver could
13  be sustained on that basis.

14    In addition, the injunctive relief plaintiffs seek pertains to current and future construction, *i.e.,*
15  that "any and all construction activities on the [BIS be enjoined] until Defendants fully comply with
16  NEPA."  Some NEPA compliance actions already had been undertaken (even if plaintiffs consider
17  them inadequate).  When "the intervening statute authorizes or affects the propriety of prospective
18  relief, application of the new provision is not retroactive."  Landgraf, 511 U.S. at 273 ("relief by
19  injunction operates *in futuro*") (citation omitted); *see also* 511 U.S. at 293 (Scalia, J. concurring)
20  ("Since the purpose of prospective relief is to affect the future rather than the past, the relevant time
21  for judging its retroactivity is at the very moment at which it is ordered").  The DHS Secretary
22  exercised his delegated discretion to waive application of NEPA on a going-forward basis.  His
23  exercise of NEPA waiver authority was not an application of new executive powers delegated by
24  Congress after plaintiffs filed this lawsuit, but rather a decision with respect to the BIS Congress had
25  authorized at the inception of the IIRIRA.

26    Plaintiffs acknowledge the Supreme Court has "emphasized that an inquiry into whether a
27  statutory provision will have an impermissible retroactive effect demands a 'common sense, functional
28  judgment about whether the new provision attaches new legal consequences to events completed

- 14 -

04CV0272

1  before its enactment.'" Pl's Brief 19:26-20:3, *quoting* <u>Martin v. Hadix</u>, 527 U.S. 343, 357-58 (1999).

2  Defendants argue the challenged legislation imposes no new and significant legal burdens on plaintiffs.

3  *Cf., e.g.,* <u>St. Cyr</u>, 533 U.S. at 321-25 (elimination of alien's eligibility for a waiver of deportation had

4  retroactive effect because alien reasonably relied on the availability of such relief at the time he agreed

5  to plead guilty). NEPA was expressly singled out as waivable in the prior version of Section 102(c),

6  years before plaintiffs filed this lawsuit. It was thus reasonably foreseeable that the BIS could at some

7  point be exempted from NEPA requirements. These considerations undermine plaintiffs' argument

8  they had an "expectation" that the NEPA legislation would necessarily always be enforceable in

9  connection with the BIS. No reasonable argument can be made that a pre-existing private lawsuit to

10  compel compliance with NEPA should override the exercise of congressionally-delegated authority

11  to waive NEPA requirements in the completion of a project uniquely within the national security and

12  immigration policy provinces of the Executive Branch, and in connection with which NEPA waiver

13  was always a congressionally-sanctioned possibility.

14      Defendants rely on the Waiver Legislation text as further support for a finding of intended

15  retroactive effect, with its use of the broad and unequivocal clause: "Notwithstanding *any* provision

16  of law, . . ." Def's Brief 14:10-14 (emphasis added). They further argue delegating to the Secretary

17  the authority to waive "*all* legal requirements" that he "determines necessary to ensure expeditious

18  construction of the barriers and roads" does not exclude any that might have been the subject of

19  litigation at the time. Def's Brief 14:20-25 (emphasis added). In addition, if the court were to

20  determine the Waiver Legislation "may not be used to waive NEPA because [conformity with NEPA]

21  is the subject of pending litigation, then the sole purpose for the Waiver would be frustrated." Def's

22  Brief 15:3-5

23          Congress enacted (and amended) the Waiver Legislation to permit the
            Secretary to *expedite* construction *of this fence* by removing certain
24          legal impediments that presented an obstacle (thereby defeating
            Congress's homeland security directive to improve border security).
25          The Secretary has determined that one such impediment is NEPA;
            Plaintiffs' position would, if credited, directly contradict the will of
26          Congress by requiring the continued compliance with a statute that the
            Secretary has determined is impeding the expedited construction of the
27          fence.

28  Def's Brief 15:5-11.

04CV0272

1    Defendants' argument is persuasive and supported by the Section 102(c) text, without recourse

2  to a legislative history analysis.[7]  Accordingly, there appears to be "no need to resort to judicial default

3  rules" in this case.  *See* Landgraf, 511 U.S. at 280; *see also* Lyons v. Agusta S.P.A., 252 F.3d 1078,

4  1084-85 (9th Cir. 2001) (courts must give statutes their "intended scope").  Even if the court were to

5  reach the second step of the Landgraf retroactivity inquiry, defendants dispel any doubt that the Waiver

6  Legislation was intended to apply to this pre-existing lawsuit by quoting from the House report:

7           Continued delays *caused by litigation* have demonstrated the need for
          additional waiver authority with respect to other laws that might impede
8           the expeditious construction of security infrastructure along the border.

9  Def's Brief 15:22-25, *quoting* H.R. No. 109-72, 2005 U.S.C.C.A.N. 240, 296 (May 3, 2005).

10    Defendants represent:

11          *[T]his action is the only litigation that has been filed regarding the San
         Diego border fence.*  Thus, Congress's direct reference to the delays
12          caused by litigation demonstrates its intent to permit the Secretary to
         take  necessary actions to waive all laws even where the result would
13          be to affect this pending suit.  The Waiver Legislation's text, legislative
         history, and clear purpose warrant its application to this pending suit.
14
  Def's Brief 15:25-16:4 (emphasis added).
15
     The only justiciable controversies Congress left for the courts to decide in this connection are
16
  constitutional claims.  It is not enough to be found impermissibly retroactive that a statute "upsets
17
  expectations based on prior law."  Landgraf, 511 at 269.  This case, alleging only claims arising under
18
  NEPA, became moot with the exemption of the BIS from the application of NEPA requirements.  This
19
  Court has been divested of jurisdiction to decide the claims, and plaintiffs have lost their standing to
20
  obtain an adjudication regarding NEPA compliance.
21
  IV.    **CONCLUSION AND ORDER**
22
     In summary, the intent of Congress' Waiver Legislation is clear:  expedite completion of the
23
  particular 14-mile Triple Fence along the U.S.-Mexico Border in the San Diego area.  The means and
24
  limitations to facilitate that result are augmentation of the DHS Secretary's delegated authority to
25

26
    [7] Plaintiffs argue there is no evidence in the legislative history of the Waiver Legislation that "speaks
27  to the issue of congressional intent on the subject of retroactivity."  For the same reasons this legislation from
   its inception is highly specific to a particular project in a specific location authorized for purposes of national
28  defense and illegal immigration control, congressional intent in the Section 102(c) amendment appears clear.
   There is no need to resort to legislative history to attempt to discern that intent.

- 16 -                                  04CV0272

1  waive not only NEPA and ESA, but also any other laws or regulations, when necessary to remove
2  impediments to that end. The DHS Secretary exercised that delegated authority in the limited context
3  approved by Congress and published explicit waivers of multiple specific environmental laws,
4  including NEPA, in a section of the September 2005 Federal Register. The waivers became effect
5  upon publication. NEPA requirements no longer apply to the BIS Triple Fence construction process.
6  For the foregoing reasons, the Court finds NEPA compliance in the construction of the BIS is no
7  longer an enforceable claim. No constitutional claim is alleged in the Complaint or has survived the
8  OSC briefing. The issues presented in this Complaint are accordingly moot, and the action is
9  **DISMISSED** in its entirety as to all claims and all parties.

10      **IT IS SO ORDERED.**

11  DATED:  _12·12·05_                          _Lary A. Burns_

12                                             **HONORABLE LARRY ALAN BURNS**
                                               United States District Judge

13  cc:   MAGISTRATE JUDGE JAN M. ADLER
          ALL COUNSEL OF RECORD

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

04CV0272