1  BRIGGS LAW CORPORATION [BLC file: 243.01]
   Cory J. Briggs (DC Bar no. 464923)
2  99 East "C" Street, Suite 111
   Upland, CA 91786
3  Telephone: 909-949-7115

4  Attorney for Plaintiffs Save Our Heritage Organisation
       and Friends of the U.S.-Mexico Border Environment

5

6

7                       UNITED STATES DISTRICT COURT

8                        FOR THE DISTRICT OF COLUMBIA

9

| | |
|---|---|
| 10  SAVE OUR HERITAGE ORGANISATION and ) <br> FRIENDS OF THE U.S.-MEXICO BORDER ) <br> 11  ENVIRONMENT, ) <br> ) <br> 12               Plaintiffs, ) <br> ) <br> 13      vs. ) <br> ) <br> 14  ALBERTO R. GONZALEZ, in his official capacity ) <br> as Attorney General of the United States; U.S. ) <br> 15  DEPARTMENT OF JUSTICE; MICHAEL ) <br> CHERTOFF, in his official capacity as Secretary of ) <br> 16  the U.S. DEPARTMENT OF HOMELAND ) <br> SECURITY; U.S. DEPARTMENT OF ) <br> 17  HOMELAND SECURITY; W. RALPH BASHAM, ) <br> in his official capacity as Commissioner of the U.S. ) <br> 18  CUSTOMS AND BORDER PROTECTION; U.S. ) <br> CUSTOMS AND BORDER PROTECTION; JULIE ) <br> 19  L. MYERS, in her official capacity as Assistant ) <br> Secretary of Homeland Security for the U.S. ) <br> 20  IMMIGRATION AND CUSTOMS ) <br> ENFORCEMENT; U.S. IMMIGRATION AND ) <br> 21  CUSTOMS ENFORCEMENT; EMILIO T. ) <br> GONZALES, in his official capacity as Director of ) <br> 22  the U.S. CITIZENSHIP AND IMMIGRATION ) <br> SERVICES; and U.S. CITIZENSHIP AND ) <br> 23  IMMIGRATION SERVICES, ) <br> ) <br> 24               Defendants. ) <br> ) <br> 25  _____ ) | CASE NO. 1:07-CV-00308-RCL <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF FEDERAL LAW** <br><br> Action Filed: February 9, 2007 |

26       Plaintiffs Save Our Heritage Organisation and Friends of the U.S.-Mexico Border Environment

27  allege as follows in this First Amended Complaint for Declaratory and Injunctive Relief for Violations

28  of Federal Law:

**Introductory Statement**

1. Plaintiffs bring this action in order to protect the natural, cultural, and historic resources along the U.S.-Mexico border from imminent destruction at the hands of the federal government. Facing destruction are resources near San Diego, California, and Yuma, Arizona--in each case because of the illegal construction of a fence along the border.

2. With respect to San Diego:

   A. San Diego's border region is home to natural treasures like the Tijuana River and the Tijuana Estuary, as well as culturally and historically important places like Border Field State Park (part of the Tijuana River National Estuarine Research Reserve) and Smuggler's Gulch. An essential breeding, feeding, and nesting ground and rest stop for more than 370 migratory and native bird species (six being endangered), the Tijuana Estuary is one of southern California's last remaining wetlands ecosystems. The Tijuana River and its surroundings are also home to a number of other species on the brink of extinction, including the San Diego fairy shrimp, the San Diego button celery, the least Bell's vireo, the light-footed clapper rail, the California least tern, the California brown pelican, the Quino checkerspot butterfly, and the California gnatcatcher. At the southwestern-most point of the U.S., Border Field State Park treats equestrians and other visitors to spectacular vistas of the Tijuana Estuary, sunsets over the ocean, and cultural sites on both sides of the border, while nearby Smuggler's Gulch is reported to be one of the many camp sites of Father Junipero Serro, the founder of many of California's first missions. Unfortunately, the federal government's Border Infrastructure System ("BIS") threatens all of this and more.

   B. The BIS calls for the construction of a 14-mile triple fence--that is, two new fences in addition to the existing fence--along the U.S.-Mexico border. Defendants (identified below) have failed to comply with numerous federal laws in planning and building the triple fence. For instance, they have failed to comply with the Coastal Zone Management Act, 16 U.S.C. § 1451 *et seq.*; the Federal Water Pollution Control Act (also known as the Clean Water Act), 33 U.S.C. § 1251 *et seq.*; the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.*; the Migratory Bird Treat Act, 16 U.S.C. § 703 *et seq.*; the Clean Air Act, 42 U.S.C. § 7401 *et seq.*; and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

Save Our Heritage Organisation *et al.* v. Gonzalez *et al.*, U.S. District Court case no. 1:07-CV-00308-RCL

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF etc.                    Page 2 of 13

1         C. In addition to Plaintiffs, several public agencies at the federal, state, regional, and local level have expressed criticism over the BIS. Among them are the U.S. Department of the Interior, the National Oceanic and Atmospheric Administration, the City of Imperial Beach, the City of San Diego, the County of San Diego, the San Diego Association of Governments, the California Coastal Commission, the California Department of Fish and Game, the California Resources Agency, the California Department of Parks and Recreation, and the California Coastal Conservancy.

        3. With respect to Yuma:

        A. Situated in southwestern Arizona, the Yuma region is home to what many consider to be the finest part of the Sonoran Desert, including the Yuma Desert. Yuma's largest neighbor to the east is the Barry M. Goldwater Range, a military installation encompassing the recreation- and resource-rich Sauceda Mountains to the northeast and Copper Mountains to the southwest. To the west of the Range is the Cocopah Indian Reservation; just beyond that, the Colorado River. The Range's southern neighbor is the Cabeza Prieta National Wildlife Refuge. The Range's southern-most border runs almost 40 miles along the U.S.-Mexico border, between the Colorado River and the Cabeza Prieta National Wildlife Refuge. The flat-tailed horned lizard--federally listed as a "threatened" species under the Endangered Species Act--migrates between the U.S. and Mexico in the vicinity of the Range. The federal government's Secure Border Initiative ("SBI") puts these resources at risk.

        B. As part of the SBI, Defendants are poised to build a 37-mile fence along the U.S.-Mexico border in southwestern Arizona. The fence will begin roughly five miles west of the Barry M. Goldwater Range and continue eastward 32 miles into the Range. Defendants have failed to comply with numerous federal laws in planning and building the 37-mile fence. For instance, they have failed to comply with the Federal Water Pollution Control Act (also known as the Clean Water Act), 33 U.S.C. § 1251 *et seq.*; the Wilderness Act, 16 U.S.C. § 1131 *et seq.*; the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.*; the National Wildlife Refuge System Administration Act, 16 U.S.C. 668dd-668ee; the Military Lands Withdrawal Act of 1999, 113 Stat. 885 (Oct. 5, 1999); the Sikes Act, 16 U.S.C. § 670 *et seq.*; and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

C. In addition to Plaintiffs, at least one member of Congress and the Center for Biological Diversity have expressed criticism over the 37-mile fence.

4. Defendants failure to comply with the federal laws identified above (and elsewhere in this pleading) is based on the erroneous belief that the laws no longer apply to the construction of the fences because those laws were waived by the Secretary of Homeland Security. The Secretary waived those laws as they relate to the San Diego fence on or about September 13, 2005 (*see* 70 Fed. Reg. 55622 (Sept. 22, 2005)), and to the Yuma fence on or about January 12, 2007 (*see* 72 Fed. Reg. 2535 (Jan. 19, 2007)). However, the legislation purporting to authorize the Secretary to waive those laws is unconstitutional and therefore invalid and without any force or effect.

**Parties**

5. Plaintiff SAVE OUR HERITAGE ORGANISATION ("SOHO") is a non-profit, public-benefit organization formed and operating under the laws of the State of California. SOHO's members reside in or near the City of San Diego, California, and have an interest in the protection of the region's natural, cultural, and historic resources. Plaintiff FRIENDS OF THE U.S.-MEXICO BORDER ENVIRONMENT ("FUMBE") is a non-profit, public-interest organization formed and operating under the laws of the State of California. FUMBE's members reside in the southwestern region of the U.S. and have an interest in the protection of the region's natural, cultural, and historic resources. Plaintiffs bring this action on behalf of themselves, their members, and other members of the public, all of whom have suffered and will continue to suffer irreparable harm as a result of Defendants' violations of federal law, as alleged in this pleading.

6. Defendant U.S. DEPARTMENT OF JUSTICE is an agency or instrumentality of the United States, and its Attorney General is believed to be Defendant ALBERTO R. GONZALEZ. Defendant U.S. DEPARTMENT OF HOMELAND SECURITY is an agency or instrumentality of the United States, and its Secretary is believed to be Defendant MICHAEL CHERTOFF. Defendant U.S. CUSTOMS AND BORDER PROTECTION is an agency or instrumentality of the United States, and its Commissioner is believed to be Defendant W. RALPH BASHAM. Defendant U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT is an agency or instrumentality of the United States, and its

Assistant Secretary of Homeland Security is believed to be Defendant JULIE L. MYERS. Defendant U.S. CITIZENSHIP AND IMMIGRATION SERVICES is an agency or instrumentality of the United States, and its Director is believed to be Defendant EMILIO T. GONZALEZ.

7. Plaintiffs are informed and believe and on that basis allege that, at all times stated in this pleading, each Defendant was the agent, servant, or employee of each other Defendant and was, in doing the things alleged herein, acting within the scope of said agency, servitude, or employment and with the full knowledge or subsequent ratification of his or its principals, masters, and employers. Alternatively, in doing the things alleged herein, each Defendant was acting alone and solely to further his, her, or its own interests.

**Jurisdiction, Venue, and Exhaustion of Remedies**

8. The Court has jurisdiction over this proceeding pursuant to Sections 1331 and 1361 of Title 28 of the U.S. Code, because this pleading alleges violations of federal law and seeks to compel Defendants to perform duties owed to Plaintiffs, their members, and other members of the public. The Court also has jurisdiction over this proceeding pursuant to Section 701 *et seq.* of Title 5 of the U.S. Code, because the pleading seeks judicial review of action taken by one or more agencies of the United States.

9. Venue is proper in this Court under Section 1391(e) of Title 28 of the U.S. Code, because (*i*) Defendants are either officers, employees, or agencies of the United States and (*ii*) a substantial part of the events or omissions giving rise to this proceeding were committed in this judicial district.

10. Plaintiffs have satisfied each and every exhaustion-of-remedies requirement that must be satisfied in order to maintain this proceeding. Alternatively, no exhaustion-of-remedies requirement may be applied to Plaintiffs.

11. Plaintiffs have no plain, speedy, adequate remedy in the ordinary course of law, since they, their members, and other members of the public will suffer irreparable harm as a result of Defendants' violations of federal law, as alleged in this pleading. Defendants have also failed to satisfy a clear, present, ministerial duty to act in accordance with all applicable laws. Even when Defendants

Save Our Heritage Organisation *et al.* v. Gonzalez *et al.*, U.S. District Court case no. 1:07-CV-00308-RCL

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF etc.    Page 5 of 13

are permitted or required by law to exercise their discretion in taking action under those laws, they remain under a clear, present, ministerial duty to exercise their discretion within the limits of and in a manner consistent with those laws. Defendants have had and continue to have the capacity and ability to take action within the limits of and in a manner consistent with those laws, but Defendants have failed and refuse to do so and have exercised their discretion beyond the limits of and in a manner that is not consistent with those laws.

12. Plaintiffs have a beneficial right and interest in Defendants' full compliance with all applicable laws.

### FIRST CLAIM:

### Failure to Comply with Coastal Zone Management Act for San Diego Fence

### (Against All Defendants)

13. Paragraphs 1 through 12 are fully incorporated into this paragraph.

14. Defendants are required to comply with all applicable provisions of the Coastal Zone Management Act ("CZMA") in planning, designing, constructing, and operating and maintaining the San Diego fence. By way of example and not limitation, Defendants are required (*i*) to ensure that the San Diego fence is consistent to the maximum extent practicable with California's coastal management program; and (*ii*) to obtain the California Coastal Commission's approval of the fence as being consistent with the management plan. Defendants have failed to comply with these provisions (and perhaps other provisions) of the CZMA.

15. Defendants' failure to comply with the CZMA was illegal, arbitrary and capricious under the Administrative Procedure Act ("APA"), a prejudicial abuse of discretion, and not supported by sufficient evidence.

16. Plaintiffs, their members, and other members of the public have been harmed as a result of Defendants' violations of the CZMA and the APA because they have been denied the benefits and protections provided by compliance with those laws.

## SECOND CLAIM:

## Failure to Comply with National Historic Preservation Act for San Diego Fence

### (Against All Defendants)

17. Paragraphs 1 through 16 are fully incorporated into this paragraph.

18. Defendants are required to comply with all applicable provisions of the National Historic Preservation Act ("NHPA") in planning, designing, constructing, and operating and maintaining the San Diego fence. By way of example and not limitation, Defendants are required to consider the effect of the San Diego fence on any historic site that is included or eligible for inclusion in the National Register of Historic Places. Defendants have failed to comply with these provisions (and perhaps other provisions) of the NHPA.

19. Defendants' failure to comply with the NHPA was illegal, arbitrary and capricious under the APA, a prejudicial abuse of discretion, and not supported by sufficient evidence.

20. Plaintiffs, their members, and other members of the public have been harmed as a result of Defendants' violations of the NHPA and the APA because they have been denied the benefits and protections provided by compliance with those laws.

## THIRD CLAIM:

## Failure to Comply with Migratory Bird Treaty Act for San Diego Fence

### (Against All Defendants)

21. Paragraphs 1 through 20 are fully incorporated into this paragraph.

22. Defendants are required to comply with all applicable provisions of the Migratory Bird Treaty Act ("MBTA") in planning, designing, constructing, and operating and maintaining the San Diego fence. By way of example and not limitation, Defendants must at all times refrain from pursuing, hunting, taking, capturing, killing, or attempting to pursue, hunt, take, capture, or kill any migratory bird or part, nest, or egg of any such bird. Defendants have failed to comply with these provisions (and perhaps other provisions) of the MBTA.

23. Defendants' failure to comply with the MBTA was illegal, arbitrary and capricious under the APA, a prejudicial abuse of discretion, and not supported by sufficient evidence.

24. Plaintiffs, their members, and other members of the public have been harmed as a result of Defendants' violations of the MBTA and the APA because they have been denied the benefits and protections provided by compliance with those laws.

### FOURTH CLAIM:

### Failure to Comply with Wilderness Act for Yuma Fence

### (Against All Defendants)

25. Paragraphs 1 through 24 are fully incorporated into this paragraph.

26. Defendants are required to comply with all applicable provisions of the Wilderness Act in planning, designing, constructing, and operating and maintaining the Yuma fence. By way of example and not limitation, Defendants must at all times refrain from engaging in or allowing any commercial enterprise, constructing any permanent or temporary road, using motor vehicles or motorized equipment, landing aircraft, engaging in or allowing any other form of mechanical transport, and erecting or otherwise building any structure or installation within a wilderness area. Defendants have failed to comply with these provisions (and perhaps other provisions) of the Wilderness Act.

27. Defendants' failure to comply with the Wilderness Act was illegal, arbitrary and capricious under the APA, a prejudicial abuse of discretion, and not supported by sufficient evidence.

28. Plaintiffs, their members, and other members of the public have been harmed as a result of Defendants' violations of the Wilderness Act and the APA because they have been denied the benefits and protections provided by compliance with those laws.

### FIFTH CLAIM:

### Failure to Comply with National Historic Preservation Act for Yuma Fence

### (Against All Defendants)

29. Paragraphs 1 through 28 are fully incorporated into this paragraph.

30. Defendants are required to comply with all applicable provisions of the NHPA in planning, designing, constructing, and operating and maintaining the Yuma fence. By way of example and not limitation, Defendants are required to consider the effect of the Yuma fence on any historic site

that is included or eligible for inclusion in the National Register of Historic Places. Defendants have failed to comply with these provisions (and perhaps other provisions) of the NHPA.

31. Defendants' failure to comply with the NHPA was illegal, arbitrary and capricious under the APA, a prejudicial abuse of discretion, and not supported by sufficient evidence.

32. Plaintiffs, their members, and other members of the public have been harmed as a result of Defendants' violations of the NHPA and the APA because they have been denied the benefits and protections provided by compliance with those laws.

## SIXTH CLAIM:

**Failure to Comply with National Wildlife Refuge System Administration Act for Yuma Fence**

**(Against All Defendants)**

33. Paragraphs 1 through 32 are fully incorporated into this paragraph.

34. Defendants are required to comply with all applicable provisions of the National Wildlife Refuge System Administration Act ("NWRSAA") in planning, designing, constructing, and operating and maintaining the Yuma fence. By way of example and not limitation, Defendants must at all times refrain from (*i*) disturbing, injuring, cutting, burning, removing, destroying, or possessing any real or personal property of the United States, including natural growth, in any area of the National Wildlife Refuge System; (*ii*) taking or possessing any fish, bird, mammal, or other wild vertebrate or invertebrate animal or part, nest, or egg thereof within any such area; or (*iii*) entering, using, or otherwise occupying any such area for any purpose. Defendants have failed to comply with these provisions (and perhaps other provisions) of the NWRSAA.

35. Defendants' failure to comply with the NWRSAA was illegal, arbitrary and capricious under the APA, a prejudicial abuse of discretion, and not supported by sufficient evidence.

36. Plaintiffs, their members, and other members of the public have been harmed as a result of Defendants' violations of the NWRSAA and the APA because they have been denied the benefits and protections provided by compliance with those laws.

**SEVENTH CLAIM:**

**Failure to Comply with Military Lands Withdrawal Act for Yuma Fence**

**(Against All Defendants)**

37.  Paragraphs 1 through 36 are fully incorporated into this paragraph.

38.  Defendants are required to comply with all applicable provisions of the Military Lands Withdrawal Act ("MLWA") in planning, designing, constructing, and operating and maintaining the Yuma fence on the land of the Barry M. Goldwater Range. By way of example and without limitation, Defendants have no jurisdiction over the land--exclusive jurisdiction is vested in the Secretary of the Air Force and the Secretary of the Navy--and the land may be used solely for the military purposes identified in the MLWA. Defendants have failed to comply with these provisions (and perhaps other provisions) of the MLWA.

39.  Defendants' failure to comply with the MLWA was illegal, arbitrary and capricious under the APA, a prejudicial abuse of discretion, and not supported by sufficient evidence.

40.  Plaintiffs, their members, and other members of the public have been harmed as a result of Defendants' violations of the MLWA and the APA because they have been denied the benefits and protections provided by compliance with those laws.

**EIGHTH CLAIM:**

**Failure to Comply with Sikes Act for Yuma Fence**

**(Against All Defendants)**

41.  Paragraphs 1 through 40 are fully incorporated into this paragraph.

42.  Defendants are required to comply with all applicable provisions of the Sikes Act in planning, designing, constructing, and operating and maintaining the Yuma fence. By way of example and not limitation, all military installations shall be managed in a way that provides for (*i*) the conservation and rehabilitation of natural resources on military installations; (*ii*) the sustainable multipurpose use of the resources, which shall include hunting, fishing, trapping, and non-consumptive uses; and (*iii*) public access to military installations to facilitate such uses. Defendants have failed to comply with these provisions (and perhaps other provisions) of the Sikes Act.

43. Defendants' failure to comply with the Sikes Act was illegal, arbitrary and capricious under the APA, a prejudicial abuse of discretion, and not supported by sufficient evidence.

44. Plaintiffs, their members, and other members of the public have been harmed as a result of Defendants' violations of the Sikes Act and the APA because they have been denied the benefits and protections provided by compliance with those laws.

## NINTH CLAIM:

### Unauthorized Construction of San Diego Fence

### (Against All Defendants)

45. Paragraphs 1 through 44 are fully incorporated into this paragraph.

46. Prior to passage of the Secure Fence Act of 2006, Defendants were authorized to construct the San Diego fence pursuant to Pub. L. 104-208, 110 Stat. 3009. The Secure Fence Act of 2006 delete that authority and no longer authorizes the construction of the San Diego fence.

47. Defendants are failing to comply with the Secure Fence Act of 2006 and other federal laws by continuing with construction of the San Diego fence despite lacking the legal authority to do so.

48. Defendants' failure to comply with the Secure Fence Act of 2006 and other federal laws was illegal, arbitrary and capricious under the APA, a prejudicial abuse of discretion, and not supported by sufficient evidence.

49. Plaintiffs, their members, and other members of the public have been harmed as a result of Defendants' violations of the Secure Fence Act of 2006, the APA, and other federal laws because they have been denied the benefits and protections provided by compliance with those laws.

### Prayer

FOR ALL THESE REASONS, Plaintiffs respectfully pray for the following relief against Defendants (and any and all other parties who may oppose Plaintiffs in this proceeding):

A. A judgment determining or declaring that Defendants' waiver of the CZMA, the NHPA, the MBTA, the Wilderness Act, the NWRSAA, the MLWA, the Sikes Act, and the APA as those laws

relate to the San Diego fence and the Yuma fence is unconstitutional and therefore invalid and without any force or effect;

  B. A judgment determining or declaring that Defendants failed to fully comply with the CZMA, the NHPA, the MBTA, the Wilderness Act, the NWRSAA, the MLWA, the Sikes Act, the APA, and the Secure Fence Act of 2006 as those laws relate to the San Diego fence and the Yuma fence;

  C. A judgment determining or declaring that Defendants must fully comply with the CZMA, the NHPA, the MBTA, the Wilderness Act, the NWRSAA, the MLWA, the Sikes Act, the Secure Fence Act of 2006, and the APA as those laws relate to the San Diego fence and the Yuma fence;

  D. Injunctive relief prohibiting Defendants (and any and all persons acting at the request of, in concert with, for the benefit of, in privity with, or under one or more of them) from taking any action on any aspect of, in furtherance of, or otherwise based on the planning, design, construction, or operation and maintenance of the San Diego fence and the Yuma fence unless and until this Court has determined that Defendants have fully complied with all applicable provisions of the CZMA, the NHPA, the MBTA, the Wilderness Act, the NWRSAA, the MLWA, the Sikes Act, the Secure Fence Act of 2006, and the APA;

  E. Any and all other relief that may be authorized by the CZMA, the NHPA, the MBTA, the Wilderness Act, the NWRSAA, the MLWA, the Sikes Act, the Secure Fence Act of 2006, or the APA but not explicitly or specifically requested elsewhere in this Prayer;

  F. All legal fees and other expenses incurred in connection with this proceeding, including but not limited to reasonable attorney fees as authorized by law; and

[This space is intentionally blank.]

G. Any and all further relief that this Court may deem appropriate.

Date: May 7, 2007.                    Respectfully submitted,

BRIGGS LAW CORPORATION


By:  /s/
     Cory J. Briggs

Attorney for Plaintiffs Save Our Heritage Organisation and Friends of the U.S.-Mexico Border Environment

## PROOF OF SERVICE

1.  My name is _____. I am over the age of eighteen. I am employed in the State of California, County of _____.

2.  My _____ business _____ residence address is _____
    _____.

3.  On _____, _____, I served ____ an original copy ____ a true and correct copy of the following documents: _____
    _____
    _____
    _____
    _____

4.  I served the documents on the person(s) identified on the attached mailing/service list as follows:

    ___ *by personal service*. I personally delivered the documents to the person(s) at the address(es) indicated on the list.

    ___ *by U.S. mail*. I sealed the documents in an envelope or package addressed to the person(s) at the address(es) indicated on the list, with first-class postage fully prepaid, and then I

      ___ deposited the envelope/package with the U.S. Postal Service

      ___ placed the envelope/package in a box for outgoing mail in accordance with my office's ordinary practices for collecting and processing outgoing mail, with which I am readily familiar. On the same day that mail is placed in the box for outgoing mail, it is deposited in the ordinary course of business with the U.S. Postal Service.

    I am a resident of or employed in the county where the mailing occurred. The mailing occurred in the city of _____, California.

    ___ *by overnight delivery*. I sealed the documents in an envelope/package provided by an overnight-delivery service and addressed to the person(s) at the address(es) indicated on the list, and then I placed the envelope/package for collection and overnight delivery in the service's box regularly utilized for receiving items for overnight delivery or at the service's office where such items are accepted for overnight delivery.

    ___ *by facsimile transmission*. Based on an agreement of the parties or a court order, I sent the documents to the person(s) at the fax number(s) shown on the list. Afterward, the fax machine from which the documents were sent reported that they were sent successfully.

    ___ *by e-mail delivery*. Based on an agreement of the parties or a court order, I sent the documents to the person(s) at the e-mail address(es) shown on the list. I did not receive, within a reasonable period of time afterward, any electronic message or other indication that the transmission was unsuccessful.

    I declare under penalty of perjury under the laws _____ of the United States _____ of the State of California that the foregoing is true and correct.

      Date: _____, _____    Signature: _____

## MAILING LIST

Save Our Heritage Organisation *et al.*
v.
Alberto R. Gonzalez *et al.*

U.S. District Court case no. 1:07-CV-00308-RCL

---

| | |
|---|---|
| Daniel Bensing<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>P.O. Box 883<br>Washington, DC 20044<br>E-mail: daniel.bensing@usdoj.gov | Attorneys for Federal Defendants |
| Donna S. Fitzgerald<br>U.S. Department of Justice<br>Environment & Natural Resources Division<br>Natural Resources Section<br>P.O. Box 663<br>Washington, DC 20044-0663<br>E-mail: donna.fitzgerald@usdoj.gov | Attorneys for Federal Defendants |