## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**SAVE OUR HERITAGE**                   )
**ORGANIZATION**, *et al.*              )
                                        )
    **Plaintiffs,**             )
                                        )
    **v.**                      )    **Civil Action No. 07-0308 (RCL)**
                                        )
**ALBERTO R. GONZALEZ, in his**         )
**official capacity as Attorney General** )
**of the United States,** *et al.*      )
                                        )
    **Defendants.**              )
_____)

## MEMORANDUM OPINION

Now before the Court comes defendants' motion [3] to dismiss for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Upon consideration of the motion,

plaintiffs' opposition, the reply, the entire record herein, and relevant law, the Court finds that

the motion to dismiss will be GRANTED.


## I.    BACKGROUND

### A.    Statutory Framework

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility

Act ("IIRIRA"), which among other reforms, required under section 102(a) that the Department

of Homeland Security ("DHS") Secretary[1] (the "Secretary") "take such actions as may be

_____

[1] Upon the 2002 creation of the DHS, authority for constructing physical border barriers and roads was transferred from the Attorney General to the DHS Secretary.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2006).

necessary to install additional physical barriers and roads . . . in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." Pub. L. No. 104-208, § 102(a), 110 Stat. 3009, 3009-554 (1996), codified at 8 U.S.C. § 1103 note: Improvement of Barriers at Border. IIRIRA section 102 also empowered the Secretary to waive the requirements of the Endangered Species Act of 1973 and the National Environmental Policy Act of 1969 upon making a determination that the waiver is "necessary to ensure expeditious construction of the barriers and roads under this section." *Id.* § 102(c).

The REAL ID Act of 2005 expanded the Secretary's waiver authority pursuant to IIRIRA section 102(c) such that "[n]otwithstanding any other provision of law, the Secretary of Homeland Security shall have the authority to waive *all legal requirements*" that the Secretary, in his "sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section." Pub. L. No. 109-13, § 102(c)(1), 119 Stat. 231, 306 (2005), codified at 8 U.S.C. § 1103 note (emphasis added). The only claims permitted under the REAL ID Act's waiver provision are those "alleging a violation of the Constitution." *Id.* § 102(c)(2)(A). And, such challenges must be "filed not later than 60 days after the date" of the Secretary's waiver. *Id.* § 102(c)(2)(B).

The version of IIRIRA section 102(b) that was in effect prior to amendment by the Secure Fence Act of 2006 was titled "Construction of Fencing and Road Improvements in the Border Area Near San Diego, California." IIRIRA § 102(b). This provision mandated that in carrying out section 102(a), the DHS Secretary would provide for construction of fences and roads "along the 14 miles of the international land border of the United States, starting at the Pacific Ocean and extending eastward." *Id.* § 102(b)(1). This 14-mile stretch included fencing and roads along the border near San Diego that plaintiffs challenge here. The Secure Fence Act

of 2006 revised IIRIRA section 102(b) while leaving section 102(a) intact. *See* Pub. L. No. 109-367, § 3, 120 Stat. 2638, 2638–39 (2006), codified at 8 U.S.C. § 1103 note. Section 102(b), as amended by the Secure Fence Act of 2006 is titled "Construction of Fencing and Road Improvements in Border Area." *Id.* This section instructs, "[i]n carrying out subsection (a) [of this note], the Secretary of Homeland Security shall provide for at least 2 layers of reinforced fencing" in five specified areas. *Id.* § 102(b)(1)(A). The amended section no longer references barriers along the border area near San Diego.

### B.    Underlying Case Background

Plaintiffs Save Our Heritage Organization and Friends of the U.S.–Mexico Border Environment filed suit in this Court seeking declaratory and injunctive relief halting the construction of two portions of physical barriers and roads along the U.S.–Mexico Border: a section near San Diego, California (the "San Diego Barrier"), and one near Yuma, Arizona (the "Yuma Barrier"). Regarding both the San Diego and Yuma Barriers, plaintiffs assert that the Government neglected to comply with several federal statutes and that DHS Secretary Michael Chertoff's waiver of those statutory requirements is unconstitutional. (*See* Am. Compl. ¶¶ 13–43; Pls.' Opp. at 10–11.) Plaintiffs further claim that, because of the Secure Fence Act's 2006 amendment to IIRIRA section 102(b), the construction of the San Diego Barrier is no longer authorized by statute. (Am. Compl. ¶¶ 46–49); *see* 8 U.S.C. § 1103 note (indicating that although the Yuma Barrier is listed among the five mandated areas, the San Diego Barrier is not included).

Defendants contend that plaintiffs have failed to state a claim for several reasons. First, the Government challenges plaintiffs' San Diego Barrier claim as untimely pursuant to the IIRIRA section 102(c)(2)(B) sixty-day limitation. (*See* Defs.' Mot. to Dismiss Mem. at 8–10.)

Additionally, the Government asserts that section 102(a) confers authority on the Secretary to construct barriers in the vicinity of the U.S.–Mexico border, including the San Diego Barrier, that are not explicitly mandated by section 102(b). (*See* Defs.' Reply at 2–6.) Regarding both barriers, defendants claim that the waiver provision contains the requisite "intelligible principle" and is not an impermissible delegation of power to the Executive Branch. (*See* Defs.' Mot. to Dismiss Mem. at 10–14.) Accordingly, the Government argues for the constitutionality of both (1) the Secretary's September 13, 2005 waiver of the requirements of eight federal statutes otherwise applicable to the construction of the San Diego Barrier and (2) the Secretary's January 19, 2007 waiver of the requirements of nine federal statutes otherwise applicable to the Yuma Barrier. *See* Notice of Determination, 72 Fed. Reg. 2535 (Jan. 19, 2007) (Yuma Barrier); Notice of Determination, 70 Fed. Reg. 55622 (Sept. 22, 2005) (San Diego Barrier).

## II.    ANALYSIS

### A.    Legal Standard

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court will dismiss a claim if the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (abrogating the prior standard which required appearance, beyond a doubt, that plaintiff can prove no set of facts in support of his claim that would entitle him to relief). This Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need

4

not accept asserted inferences or conclusory allegations that are unsupported by the facts set

forth in the complaint.  *Kowal*, 16 F.3d at 1276.

### B.     Secretary's Authority to Construct San Diego Barrier

This Court finds that IIRIRA section 102(a) confers sufficient power on the Secretary to

construct the San Diego barrier.  That statute instructs the Secretary to construct barriers "in the

vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the

United States."  8 U.S.C. § 1103 note.  No portion of the statute's text imposes any further

geographical restrictions on the Secretary's authority to construct barriers.  Plaintiffs would have

this Court interpret the 2006 amendment to section 102(b) as narrowing the Secretary's

authority, which is derived from section 102(a).  The statute's explicit language does not support

such an interpretation.

Section 102(b) mandates the construction of barriers in five specific areas that the

Secretary shall build "in carrying out subsection (a)."  8 U.S.C. § 1103 note.  As plaintiffs

observe, the San Diego barrier is not one of the five specifically mandated areas listed in this

subsection.  The version of section 102(b) in effect prior to 2006, however, explicitly mandated

construction of the San Diego Barrier.  *See* IIRIRA, 104 Pub. L. No. 208, § 102(b), 110 Stat.

3009, 3009-554 (1996).  Despite this change to subsection (b) of the statute, the Secretary's

general authority to construct border barriers—derived from subsection (a)—remains unchanged.

Consequently, the Court finds that section 102(a), on its face, authorizes construction of barriers

such as the San Diego Barrier in areas that the Secretary determines are areas of high illegal

entry into the United States.

5

### C.     Sixty-Day Statute of Limitations Applied to San Diego Barrier

Having found that IIRIRA section 102 authorizes construction of the San Diego barrier, the Court next considers plaintiffs' compliance with the section 102(c)(2)(B) sixty-day statute of limitations.  Plaintiffs filed suit on February 9, 2007, long after the expiration of the 60-day period that began to run upon the Secretary's September 22, 2005 waiver notice.  Thus, plaintiffs are time-barred from maintaining suit arising from the Secretary's San Diego Barrier waiver.  Plaintiffs nonetheless argue that their claims are timely because they invoke this Court's jurisdiction under the Administrative Procedure Act ("APA") and its accompanying six-year statute of limitations.  (Am. Compl. ¶ 8); *see* 28 U.S.C. § 2401(a).  The Court disagrees because, (1) as described in Part II.D of this opinion, the court finds that the Secretary validly exercised his waiver authority in waiving the legal requirements of the APA and other federal statutes, and (2) IIRIRA section 102(c) provides an express 60-day limitation for challenges arising from the Secretary's waiver authority.  *See* Notice of Determination, 70 Fed. Reg. 55622 (Sept. 22, 2005); *see also Kendall v. Army Bd. for Correction of Military Records*, 996 F.2d 362, 366 (D.C. Cir. 1993) (holding that compliance with a statutory limitations period is a condition to federal court jurisdiction and that a court should dismiss a plaintiff's claims upon failure to demonstrate such compliance).

### D.     Constitutionality of Waiver Provision

#### 1.     Applicable Law

In determining whether a delegation of authority from Congress to the Executive Branch is impermissibly broad, a court asks whether the statute in question sets forth "an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed

to conform." *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (quoting *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)).  Congress's ability to delegate power is broad and a statute need only "clearly delineate[ ] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority."  *Id.* at 372–73 (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)); *see Defenders of Wildlife v. Chertoff*, Civ. No. 07-1801, 2007 U.S. Dist. LEXIS 92648, at *20 (D.D.C. Dec. 18, 2007) (indicating that the Supreme Court has *widely* permitted Congress to delegate legislative authority provided that Congress offers sufficient guidance).

The last Supreme Court cases expressly relying on the nondelegation doctrine to invalidate federal statutes were both decided in 1935.  *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935).  In describing those cases the Supreme Court has stated:   "In the history of the Court we have found the requisite 'intelligible principle' lacking in only two statutes, one of which provided literally no guidance for the exercise of discretion, and the other of which conferred authority to regulate the entire economy on the basis of no more precise standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (citing *Schechter Poultry*, 295 U.S. 495; *Panama Refining*, 293 U.S. 388).  The Supreme Court "[has] almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law."  *Id.* at 474–75; *see Loving v. United States*, 517 U.S. 748, 771 (1996) ("Though in 1935 we struck down two delegations for lack of an intelligible principle, we have since upheld, without exception, delegations under standards phrased in sweeping terms.") (citations omitted); *Mistretta*, 488 U.S. at 373 (stating

that since 1935, the Supreme Court has upheld "without deviation, Congress' ability to delegate power under broad standards").

### 2.     Secretary's Waiver Authority Is Constitutional

For the reasons set forth below, this Court finds that the Secretary's waiver authority is not an impermissible delegation of power to the Executive Branch, and accordingly finds that the Secretary's waiver here is constitutional.

Plaintiffs maintain that section 102 merely provides an "amorphous goal" of "expeditious construction" of barriers and roads anywhere along the U.S. border and that the delegation here is analogous to both 1935 cases, *Schechter Poultry* and *Panama Refining*. (*See* Pls.' Opp'n at 15.)   In fact, the statute offers more guidance than plaintiffs contend:  the Secretary is only authorized to seek "expeditious construction" of barriers and roads "to deter illegal crossing in areas of high illegal entry into the United States."  *See* 8 U.S.C. § 1103 note.

The issue of the constitutionality of the Secretary's IIRIRA section 102 waiver authority was recently considered by Judge Huvelle in *Defenders of Wildlife*.  *See* 2007 U.S. Dist. LEXIS 92648.  Rejecting the assertion that the Secretary's waiver power was an unconstitutional delegation of power, Judge Huvelle held that in sum,

> [t]his legislative directive meets the requirements of the Supreme Court's nondelegation cases.  The "general policy" is "clearly delineated"—i.e. to expeditiously "install additional physical barriers and roads" . . . to deter illegal crossings in areas of high illegal entry." And, the "boundaries" of the delegated authority are clearly defined by Congress's requirement that the Secretary may waive only those laws that he determines "necessary to ensure expeditious construction."

*Id.* at *22 (quoting *Mistretta*, 488 U.S. at 372–73; 8 U.S.C. § 1103 note).  The court further recognized that "[w]hen the area to which the legislation pertains is one where the Executive

8

Branch already has significant independent constitutional authority, delegations may be broader than in other contexts." *Id.* at *28 (quoting *Sierra Club v. Ashcroft*, 2005 U.S. Dist. LEXIS 44244, Civ. No. 04-272, at *17 (S.D. Cal. Dec. 12, 2005)); *see Loving*, 517 U.S. at 772. The construction of the San Diego and Yuma barriers relate to "foreign affairs and immigration control—areas over which the Executive Branch traditionally exercises independent constitutional authority." *Defenders of Wildlife*, U.S. Dist LEXIS 92648, at *28. Thus, "the Executive has 'a degree of discretion and freedom from statutory restriction which would not be admissible were domestic affairs alone involved.'" *Id.* (quoting *Clinton v. City of New York*, 524 U.S. 417, 445 (1998)). When Congress legislates in these areas, "[it] is implementing an inherent executive power." *Id.* at *29 (citing *Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950)).

This Court agrees with the analysis in *Defenders of Wildlife* regarding the constitutionality of the Secretary's waiver power.[2] And, that analysis is equally applicable to plaintiffs' current challenge to the same waiver power. Consequently, this Court finds no constitutional impediment to the Secretary's waivers because there is an intelligible principle that the Secretary must conform to in the exercise of his delegated power. Thus, even if plaintiffs' San Diego Barrier claim were not time-barred, when construing facts and allegations most favorably toward plaintiffs, both the San Diego and Yuma Barrier challenges would still be dismissed for failure to state a claim.

---

[2] The Court is aware of only one additional case where the Secretary's section 102 waiver authority was challenged as unconstitutional, *Sierra Club v. Ashcroft*, 2005 U.S. Dist. LEXIS 44244. There, the court held the delegation constitutional by finding that improvement of U.S. border protection was a "clearly delineated general policy" and that Congress adequately proscribed the Secretary's permitted actions to those "necessary to install additional barriers and roads" for the purpose of deterring illegal entry into the United States. *Id.* at *20–21.

**III.**     **<u>CONCLUSION</u>**

For the reasons set forth above, the motion [3] to dismiss will be GRANTED and this case will be dismissed with prejudice.

A separate order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, on February 4, 2008.